Igdalia Melany FLORES, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–99–00270–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 14, 2000.

James R. Butler, Houston, for appellants.

Alan Curry, Houston, for appellees.

Panel consists of Justices ANDERSON and FROST, and Senior Justice LEE.[*]

**CORRECTED OPINION
ON REHEARING**

ANDERSON, Justice.

We withdraw our opinion issued August 31, 2000, and substitute the following corrected opinion.

A jury convicted appellant, Igdalia Flores, of violating a City of Houston ordinance requiring entertainers employed by a sexually oriented enterprise to obtain a permit from the City of Houston. She was fined three hundred dollars and sentenced to two days incarceration in the Harris County Jail. In fourteen points of error, she alleges the trial court erred in entering judgment because (1) the county court at law lacked jurisdiction over the cause; (2) the information was defective; (3) the municipal ordinance, upon which she was convicted, is unconstitutionally vague; (4) the evidence is legally and factually insufficient to support the verdict; and, (5) she was denied a hearing on her objection to the State's peremptory challenges. We affirm.

**I. Background and Procedural History**

While on assignment in another case at an adult cabaret, Tim Cox, a City of Houston vice officer, observed appellant dancing

topless between the legs of a male customer. After she completed the dance, Cox approached appellant and asked her to accompany him to a back room of the club. At her request, Cox permitted appellant to make change for the customer before meeting him in the room. There, Cox confirmed that appellant did not have a permit from the City of Houston to act as an entertainer in the club. Consequently, he arrested her for engaging in entertainment without obtaining a permit in violation of the city ordinance.

The State charged appellant with a violation of the ordinance by information. Appellant moved to quash the information, alleging the same complaints she now raises on appeal. After a hearing, the trial court denied the motion and the cause proceeded to trial. Appellant filed a motion for new trial, which was overruled by operation of law.

**II. Motion to Quash**

In her first seven points of error, appellant contends the trial court abused its discretion by denying her motion to quash. In her first two points of error, appellant contends the information did not charge her with a violation of state law; therefore, the county court at law lacked jurisdiction over the case. In points three and four, appellant complains the information was fundamentally defective because it failed to allege all of the material elements of the offense. In points of error five through seven, appellant maintains the information failed to provide sufficient notice to prepare a defense and sufficient facts to bar a subsequent prosecution because it failed to state the manner and means by which she engaged in entertainment.

We review a trial court's order quashing an information for an abuse of discretion. *See Thomas v. State*, 621 S.W.2d 158, 163 (Tex.Crim.App.1981) (op. on reh'g); *State v. Kinkle*, 902 S.W.2d 187,

[*] Senior Justice Norman Lee sitting by assignment.

189 (Tex.App.—Houston [14th Dist.] 1995, no pet.). A trial court abuses its discretion if it acts without reference to any guiding rules and principles, or acts arbitrarily or unreasonably. *See Lyles v. State,* 850 S.W.2d 497, 502 (Tex.Crim.App.1993); *Montgomery v. State,* 810 S.W.2d 372, 380 (Tex.Crim.App.1990).

Appellant raised the same objections to the trial court in her motion to quash and at the hearing on the motion as she does on appeal. The trial court denied the motion at the hearing but offered no explanation for the denial.

### A. Jurisdiction

In her first two points of error, appellant contends the county court at law abused its discretion in denying her motion to quash because the court lacked jurisdiction over the cause. Appellant bases this contention on the following grounds: (1) the State did not offer proof that the City of Houston ordinance vested the county court at law with jurisdiction; (2) the information failed to charge appellant with a violation of state law or otherwise set forth sufficient information to vest the county court at law with jurisdiction; and (3) Chapter 243 of the Texas Local Government Code regulates the licensing of owners or operators of a sexually oriented business but not entertainers.

### 1. Judicial Notice and Proof of Ordinance

■ In her first argument, appellant contends the county court at law lacked jurisdiction over this case because the State neither asked the court to take judicial notice of the municipal ordinance nor offered a copy of the ordinance into evidence at the motion to quash hearing. Appellant contends that the State was required to offer proof of the ordinance because without proof of the ordinance, the county court at law had no means by which to determine whether it had jurisdiction over the case.

Under the former rules of criminal evidence, Texas courts could not take judicial notice of the existence of city ordinances or their terms, even on their own motion. *See Lange v. State,* 639 S.W.2d 304, 306 (Tex.Crim.App.1982); *Green v. State,* 594 S.W.2d 72, 74 (Tex.Crim.App.1980); *Cole v. State,* 556 S.W.2d 343 (Tex.Crim.App. 1977); *Jones v. State,* 172 Tex.Crim. 100, 354 S.W.2d 160 (1962). Consequently, courts with appellate jurisdiction required proof of ordinances where the ordinances "enter into a transaction and are relied on." *Lange,* 639 S.W.2d at 306. A reviewing court, however, could take judicial notice of an ordinance if the record of the trial below reflected relevant portions of the ordinance. *See DeDonato v. State,* 819 S.W.2d 164, 166 (Tex.Crim.App.1991).

■ Under the current rule, any Texas court may, upon its own motion or the motion of a party, take judicial notice of a municipal ordinance, provided the party requesting notice furnishes the court with sufficient information to comply with the request and the court gives the opposing party an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. *See* Tex. R.Evid. 204. The record in this case indicates that the trial court and the parties were aware of and familiar with the provisions of the ordinance. At the hearing on appellant's motion, the State maintained that the county court at law had jurisdiction over the case because a violation of the municipal ordinance was a Class A misdemeanor by virtue of the ordinance's reference to section 243.001 of the Texas Local Government Code. Appellant's trial attorney acknowledged the terms of the ordinance when he complained that the City of Houston could not apply Chapter 243 to entertainers because the Legislature enacted Chapter 243 years before the City of Houston enacted this particular ordinance.[1] Later during the hearing, ap-

---

1. Appellant's trial attorney said, "In the ordi-

nance it says that all violations of this ordi-

pellant's trial attorney complained that the information did not state the material elements of the offense, which "come under the ordinance definition of entertainment, that it must be performed in the presence of a customer and there must be a specified sexual activity performed or a specified anatomical area exposed." The trial court then asked the State by what means it intended to proceed at trial and specifically, the sexual activity it alleged appellant engaged in while providing entertainment.[2] We find this discussion sufficient to establish that the trial court took judicial notice of the ordinance and specifically section 28–253.

### 2. Offense on Face of Information

■ Next, appellant argues that "the information fails to charge a violation of state law, or otherwise set forth sufficient information to vest the County Criminal Court at Law with jurisdiction." Without citing authority, appellant claims that because the face of the information alleges that appellant violated a municipal ordinance and not a Class A misdemeanor pursuant to Chapter 243 of the local government code, jurisdiction vests in the municipal court, and not the county court at law.

■ "Jurisdiction vests only upon the filing of a valid indictment in the appropriate court." Cook v. State, 902 S.W.2d 471, 476 (Tex.Crim.App.1995). Generally, a municipal court has exclusive original jurisdiction over all criminal matters arising under municipal ordinances within the city. See Tex.Code Crim.Proc.Ann. art. 4.14(a) (Vernon Supp.2000). A municipal court's jurisdiction in criminal cases, however, is restricted to offenses punishable by money fine alone. See id. art. 4.14(c). A municipal court does not have exclusive original

jurisdiction over a violation of an ordinance punishable by confinement in jail or imprisonment. Id.

A county court at law, on the other hand, has exclusive original jurisdiction of misdemeanors other than misdemeanors involving official misconduct and offenses punishable by a fine of $500 or less. See Tex.Gov't Code Ann. § 26.045 (Vernon Supp.2000). A violation of a municipal ordinance regulating sexually oriented businesses is a Class A misdemeanor. See Tex.Loc.Gov't.Code Ann. § 243.010(b) (Vernon 1999). Punishment for a Class A misdemeanor includes a fine and/or confinement in jail for a term not to exceed one year. See Tex.Pen.Code Ann. § 12.21 (Vernon 1994). Because a violation of a municipal ordinance regulating sexually oriented businesses is a Class A misdemeanor punishable by fine or confinement, jurisdiction vests with the county court at law and not a municipal court. See State v. Coleman, 757 S.W.2d 127, 127 (Tex.App.— Houston [1st Dist.] 1988, pet. ref'd). In this case, a valid information was filed in the appropriate court, the county court at law.

The fact that the face of the information did not indicate which enabling statute the State relied upon to support the prosecution did not deprive the court of its jurisdiction over the cause. See DeDonato, 819 S.W.2d at 168 (Maloney, J. concurring). As discussed in points of error three and four, the information was a valid instrument filed in the appropriate court. Hence, the jurisdictional requirements were met.

### 3. Authority of Municipality under Chapter 243 Texas Local Government Code

■ In her third argument, appellant contends the county court at law lacks

---

nance will be punished pursuant to Chapter 243 of the Local Government Code."

**2.** The trial court asked the State what specific sexual activities appellant engaged in. The prosecutor answered, "Like fondling or other erotic touching of human genitals, pubic re-

gion or pubic hair, buttocks or female breast." Appellant's attorney queried, "Again, which one? That's our whole point here is that—" The trial court responded, "Her left breast or right breast?"

jurisdiction over the case because the Ordinance falls outside the provisions of Chapter 243 of the Texas Local Government Code. Chapter 243 is the enabling legislation that permits municipalities to regulate sexually oriented businesses. *See* Tex.Loc.Gov't.Code Ann. § 243.001 (Vernon 1999). Appellant maintains Chapter 243 limits the scope of a municipality's authority to regulate a sexually oriented business to the location of the business and to the licensing of the owner or operator of the business. Appellant maintains Chapter 243 grants no authority to require an entertainer to obtain a license or permit. We disagree.

In enacting Chapter 243, the Texas Legislature granted to municipalities broad powers to regulate sexually oriented businesses within the municipality. The Legislature expressly found that "the unrestricted operation of certain sexually oriented businesses may be detrimental to the public health, safety, and welfare by contributing to the decline of residential and business neighborhoods and the growth of criminal activity." *Id.* § 243.001(a). To remedy this problem, the Legislature authorized municipalities to adopt by ordinance regulations regarding sexually oriented businesses that the municipality considers necessary to promote the public health, safety, or welfare of the community. *See id.* § 243.003(a). The Legislature further expressed its intent that no provision of chapter 243 "diminish the authority of a local government to regulate sexually oriented businesses with regard to any matters." *Id.* § 243.001(b). While sections 243.006 and 243.007 of this chapter authorize a municipality to restrict or prohibit the location of a sexually oriented business and to require an owner or operator to obtain a license or permit to operate the business; *see id.* §§ 243.006, 243.007; they in no way restrict the municipality from regulating the conduct of employees of sexually oriented businesses. *See Haddad v. State,* 9 S.W.3d 454, 458 (Tex.App.—Houston [1st Dist.] 1999, no pet.). Regulation of con-

duct may include the requirement that an employee acting as an entertainer in a sexually oriented enterprise hold a permit issued by the municipality. *See Jackson v. State,* 880 S.W.2d 432, 435 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd).

Because the information was valid, filed in the appropriate court, and the offense was properly enabled under Chapter 243 of the local government code, the county court at law had jurisdiction over the cause. Therefore, the trial court did not abuse its discretion in denying appellant's motion to quash the information on appellant's jurisdictional complaint. Accordingly, appellant's first and second points of error are overruled.

### 4. Fundamental Defect

In her third and fourth points of error, appellant contends the information is fundamentally defective because it does not allege all of the material elements of the offense. A fundamental defect in a charging instrument deprives the trial court of jurisdiction. *See Ex parte Patterson,* 969 S.W.2d 16, 18 (Tex.Crim.App. 1998). Appellant maintains the information is fundamentally defective because it omitted the method comprising the element of entertainment as defined by the Ordinance, *i.e.,* the exposure of a specific anatomical area or the display of a specific sexual activity.

A charging instrument is fundamentally defective only if it fails to charge a person with an offense. *Ex parte Patterson,* 969 S.W.2d at 19 (quoting Tex. Const. art. V, § 12(b)). The failure to allege an element of an offense in a charging instrument is a defect of substance. *See Studer v. State,* 799 S.W.2d 263, 267–68 (Tex.Crim.App.1990). An information "flawed by a defect of substance but which purports to charge an offense is not fundamentally defective and, in the absence of a pretrial objection, will support a conviction." *See Ex parte Patterson,* 969 S.W.2d

at 19. As long as the information charges "the commission of an offense," it is not fundamentally defective even if fails to allege an element of an offense. *Duron v. State,* 956 S.W.2d 547, 551 (Tex.Crim.App. 1997).

■ "Conduct does not constitute an offense unless it is defined as an offense by statute, municipal ordinance, order of a county commissioners court, or rule authorized by and lawfully adopted under a statute." TEX.PEN.CODE ANN. § 1.03(a) (Vernon 1994). A written instrument sufficiently charges a person with an offense if it alleges on its face all of the statutory elements comprising a criminal offense, even if it is otherwise defective. *See Duron,* 956 S.W.2d at 551.

■ In this case, the State sufficiently charged appellant with the commission of an offense. A violation of section 28–253(a) of Article VIII of the Ordinance is a criminal offense under Chapter 243 of the local government code. *See* TEX.LOC. GOV'T.CODE ANN. § 243.010(b) (Vernon 1999). Section 28–253(a) provides that "[i]t shall be unlawful for any person who does not hold a permit to act as an entertainer or a manager of or in an enterprise." HOUSTON, TEX., CODE § 28–253(a) (2000). Thus, the elements of the offense are (1) a person (2) without a permit (3) acts as an entertainer (4) in an enterprise. *See id.*

The information here alleged the elements of the offense described in section 28–253(a) of Article VIII of the Ordinance as follows, in pertinent part:

[T]hat in Harris County, Texas, **IGDALIA MELANY FLORES**, hereafter styled the Defendant, heretofore on or about **SEPTEMBER 3, 1998**, did then and there unlawfully intentionally and knowingly act as entertainer at MICHAEL'S INTERNATIONAL, a sexually oriented enterprise, namely, an adult cabaret located at 6440 Southwest Freeway and within the incorporated limits of the City of Houston without holding a valid permit issued by the Chief of Police of the City of Houston, or his designee, as required under section 28–253(a) of the Code of Ordinances of the City of Houston.

Because the information plainly states the elements of the offense under section 28–253(a), the information is not fundamentally defective. The trial court did not abuse its discretion in denying appellant's motion to quash; accordingly, appellant's third and fourth points of error are overruled.

### B. Notice

In her fifth, sixth, and seventh points of error, appellant maintains the trial court committed reversible error in denying her motion to quash the information and her motion for new trial because the information failed to provide her with sufficient notice by which to prepare a defense and to plead sufficient facts to bar a subsequent prosecution. Specifically, appellant argues the information failed to identify the act or performance that she engaged in under the Ordinance and failed to identify which specified sexual activity or anatomical area was involved as defined by the Ordinance.

■ Both the Sixth Amendment to the United States Constitution and Article I, section 10 of the Texas Constitution require the State to give a defendant notice before trial of the nature and cause of the accusation against him. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. They further require that notice be given with sufficient clarity and detail to enable the defendant to anticipate the State's evidence and prepare a proper defense to it. *See Garcia v. State,* 981 S.W.2d 683, 685 (Tex.Crim.App.1998).

The Texas Legislature has also provided some guidance for the requisite specificity of an information. *See State v. Mays,* 967 S.W.2d 404, 406 (Tex.Crim.App.1998). "The rules with respect to allegations in an indictment and the certainty required apply also to an information." TEX.CODE CRIM.PROC.ANN. art. 21.23 (Vernon 1989).

Article 21.21(7) of the Texas Code of Criminal Procedure requires that an information set forth the offense "in plain and intelligible words." *Id.* art. 21.21(7). Article 21.03 provides that "[e]verything should be stated in an indictment which is necessary to be proved." *Id.* art. 21.03. Finally, article 21.04 provides "[t]hat the certainty required in an indictment is such as will enable the accused to plead the judgment that may be given upon it in bar of any prosecution for the same offense." *Id.* art. 21.04.

■■■■■ Generally, a motion to quash will be granted if the facts sought are essential to give notice. *See State v. Edmond,* 933 S.W.2d 120, 129 (Tex.Crim.App. 1996) (quoting *Thomas v. State,* 621 S.W.2d 158, 161 (Tex.Crim.App.1981) (op. on reh'g)). If a fact is not essential, the information need not plead evidence relied upon by the State. *See id.* "Subject to rare exceptions, an indictment tracking the language of the statute will satisfy constitutional and statutory requirements; the State need not allege facts that are merely evidentiary in nature." *Mays,* 967 S.W.2d at 406. An exception to this general rule arises when a statute defines the manner or means of the commission of the offense in several alternative ways. *See id.* When "a criminal statute possesses statutorily-defined, alternative methods of committing an offense, then upon timely request, a defendant is entitled to an allegation of which statutory method the State intends to prove." *Edmond,* 933 S.W.2d at 128. This rule applies only when the statutory term describes an act or omission of the defendant. *See Lewis v. State,* 659 S.W.2d 429, 431 (Tex.Crim.App.1983); *State v. Goldsberry,* 14 S.W.3d 770, 773 (Tex.App.—Houston [1st Dist.] 2000, pet. ref'd). The reason for the exception is that a defendant is constitutionally entitled to know what behavior she allegedly engaged in so she can properly prepare a defense to that allegation. *See State v. Carter,* 810 S.W.2d 197, 199 (Tex.Crim. App.1991). In any case, under Article I,

section 10 of the Texas Constitution, the requisite notice of an offense must come from the face of the information. *See Adams v. State,* 707 S.W.2d 900, 901 (Tex. Crim.App.1986). Under the constitutional guarantee of adequate notice, a defendant may not be left to guess or assume that the State is going to prove one or all of the types of statutorily defined conduct. *See Carter,* 810 S.W.2d at 199.

The Ordinance explicitly describes the conduct that is subject to criminal sanctions if performed by an employee of a sexually oriented business without a permit. Section 28–253(a) provides that "[i]t shall be unlawful for any person who does not hold a permit to act as an entertainer or manager of or in an enterprise." Houston, Tex., Code § 28–253(a) (2000). The Ordinance defines an entertainer as "[a]ny employee of an enterprise who performs or engages in entertainment." *Id.* § 28–251. "Entertainment" is defined as "[a]ny act or performance, such as a play, skit, reading, revue, fashion show, modeling performance, pantomime, role playing, encounter session, scene, song, dance, musical rendition or striptease that involves the display or exposure of specified sexual activities or specified anatomical areas or engaging in any specified sexual activities whatever in the presence of customers." *Id.* "Specified anatomical areas" are defined as "less than completely and opaquely covered: (a) human genitals, pubic region or pubic hair; (b) buttock; (c) female breast or breasts or any portion thereof that is situated below a point immediately above the top of the areola; or (d) any combination of the foregoing." *Id.* § 28–121. "Specified sexual activities" include (1) human genitals in a discernable state of sexual stimulation or arousal; (2) acts of human masturbation, sexual intercourse or sodomy; (3) fondling or other erotic touching of human genitals, pubic region or pubic hair, buttock or female breast or breasts; or (4) any combination of the foregoing. *See id.*

■■■ In short, section 28.253(a) criminalizes a specific type of entertainment

performed by an employee of a sexually oriented enterprise if performed for customers without a permit from the City of Houston. The manner and means of "acting as a entertainer" under such circumstances consists of performing a specific act, such as a table dance, that involves the display of specified sexual activities or exposure of specified anatomical areas as defined by the Ordinance. The display of specific sexual activities or exposure of specific anatomical areas refers to characteristics of the act or performance that criminalize the act or performance if performed without a permit. For this reason, we hold the type of sexual activity performed and the specific anatomical area exposed to be facts essential to give notice.[3] The face of the information, here, does not allege these facts; consequently, the information fails to give appellant the requisite notice.[4]

■■■■■ The failure of an information to give a defendant sufficient notice of the offense charged constitutes a defect of form. *See Olurebi v. State*, 870 S.W.2d 58, 61 (Tex.Crim.App.1994); *American Plant Food Corp. v. State*, 508 S.W.2d 598, 602 (Tex.Crim.App.1974). A judgment is not affected by a defect of form that "does not prejudice the substantial rights of the defendant." Tex.Code Crim.Proc.Ann. art. 21.19 (Vernon 1989); *see also Adams*, 707 S.W.2d at 902. The face of the information did not provide sufficient notice to appellant. Therefore, it was error for the trial court to deny appellant's motion to quash. Accordingly, we must now perform a harm analysis by determining "whether, in the context of the case, this had an impact on the defendant's ability to prepare a defense, and finally, how great an impact." *Adams*, 707 S.W.2d at 903.

■■■■■ The failure to provide proper notice in a charging instrument is not reversible error unless the error affects the defendant's ability to prepare a defense. *See Chambers v. State*, 866 S.W.2d 9, 17 (Tex.Crim.App.1993); *Peck v. State*, 923 S.W.2d 839, 841 (Tex.App.—Tyler 1996, no pet.). In making this determination, we consider the complete record. *See Saathoff v. State*, 908 S.W.2d 523, 528 (Tex. App.—San Antonio 1995, no pet.) (opinion on remand); *see also Saathoff v. State*, 891 S.W.2d 264, 267 (Tex.Crim.App.1994) (remanding case to intermediate court of appeals to perform an *Adams* analysis by reviewing the record for prejudice to appellant's substantial rights from trial court's erroneous refusal to grant appellant's motion to quash indictment based on notice defect).

■■■■ A review of the record fails to show how the lack of notice in the information adversely impacted appellant's ability to prepare a defense. The record reflects that appellant had notice of the police offense report and a supplemental narrative to the report.[5] The supplemental narrative states that appellant, wearing nothing but a bikini bottom, was performing a table dance between the legs of a seated male patron. The report contains a graphic and detailed description of appellant's performance (*e.g.*, "shaking her breasts near his face . . . placing her buttocks near his face"). Furthermore, the record shows that the day before trial at the hearing on appellant's motion to quash, the State informed the trial court as well as appellant's counsel of the State's intention to prove that appellant acted as an "entertainer" by engaging in "specified sexual activities," namely "fondling or other erotic touching of human genitals, pubic region

3. Unlike this case, the term "entertainment" in the information in *Kaczmarek v. State*, 986 S.W.2d 287 (Tex.App.—Waco 1999, no pet.), did not involve the defendant's conduct, but one of the many services provided by a manager of a sexually oriented enterprise. *See id.*

4. Upon appellant's timely motion to quash, the State should have amended the information. *See* Tex.Code Crim.Proc.Ann. art. 28.10 (Vernon 1989).

5. Neither the offense report nor the supplemental narrative described the act for which appellant was tried.

or pubic hair, buttocks or female breast." At trial, Officer Cox testified that while dancing between the legs of a seated male customer, appellant was erotically caressing her buttocks and placing her buttocks near the customer's face.

There is nothing in the record or in appellant's arguments to suggest that defense strategy turned on the particular anatomical area (genitals, breast, buttocks, or pubic area) or sexual act (fondling or erotic touching) involved or that appellant was in any way impaired in her ability to present a defense. There is nothing in the record to suggest that appellant was prejudiced as a result of any surprise because she had anticipated that the State would target her touching of a different body part or engaging in a different sexual act, nor is there any reasonable basis to conclude that appellant was unable to defend against the charge of entertaining without a permit because she was not aware of the specific type or act of "entertainment" at issue.[6] We are unable to find from this record that the omission of the manner and means from the information had a deleterious impact on appellant's defense.

In the final analysis, this record supports a conclusion beyond a reasonable doubt that the absence of notice of the manner or means of the commission of the offense in the information did not prejudice the substantial rights of appellant. In *Adams,* the court held that a defect in notice must prejudice the substantial rights of a defendant before reversal is warranted. *See* 707 S.W.2d at 904. Thus, because the error in denying appellant's motion to quash, or her motion for new trial on the same grounds, did not prejudice appellant's substantial rights, reversal based on such error is not warranted. Accordingly, appellant's fifth, sixth, and seventh points of error are overruled.

### III. CONSTITUTIONALITY OF THE ORDINANCE

In her eighth and ninth points of error, appellant claims the Ordinance is unconsti-

tutionally vague under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, section 19 of the Texas Constitution. Appellant claims the Ordinance is unconstitutionally vague because it does not define the term "erotic."

■ The Due Process Clause of the Fourteenth Amendment requires a legislature to define a criminal offense in its penal statutes in a manner sufficient to inform ordinary people whether their conduct is prohibited and to provide minimal guidelines to govern law enforcement. *See State v. Edmond,* 933 S.W.2d 120, 125 (Tex.Crim.App.1996). "Without such guidance, a penal statute might be susceptible to arbitrary and discriminatory enforcement." *Id.*

■ An appellate court presumes the validity of a statute or ordinance attacked on constitutional grounds. *See Ex Parte Granviel,* 561 S.W.2d 503, 511 (Tex. Crim.App.1978); *Webb v. State,* 991 S.W.2d 408, 414 (Tex.App.—Houston [14th Dist.] 1999, pet. ref'd). The court must uphold the ordinance if a reasonable construction will render it constitutional and carry out the legislative intent. *See Ely v. State,* 582 S.W.2d 416, 419 (Tex.Crim.App. 1979); *Meisner v. State,* 907 S.W.2d 664, 667 (Tex.App.—Waco 1995, no pet.). Appellant bears the burden to prove the ordinance unconstitutional as applied specifically to her conduct. *See Meisner,* 907 S.W.2d at 667.

■ A statute is vague if persons of common intelligence must necessarily guess at its meaning and differ about its application. *See Cotton v. State,* 686 S.W.2d 140, 141 (Tex.Crim.App.1985); *Ex parte Anderson,* 902 S.W.2d 695, 699 (Tex. App.—Austin 1995, pet. ref'd). A statute need not be mathematically precise; it need only give fair warning, in light of

---

6. The male customer was not identified by appellant or the police report; thus, he was unavailable to testify. The club manager testified that he did not observe the dance.

common understanding and practices. *See Ex parte Anderson,* 902 S.W.2d at 699. A statute is not unconstitutionally vague merely because the words or terms used are not defined. *See Edmond,* 933 S.W.2d at 126.

When words are not defined, they are ordinarily given their plain meaning unless the statute clearly shows that they were used in some other sense. *See Ex parte Anderson,* 902 S.W.2d at 699. Statutory words are to be read in context and construed according to the rules of grammar and common usage. *See* Tex. Gov't Code Ann. § 311.011(a) (Vernon 1998). Words defined in dictionaries and with meanings so well known as to be understood by a person of ordinary intelligence are not vague and indefinite. *See Floyd v. State,* 575 S.W.2d 21, 23 (Tex. Crim.App.1978); *Ex parte Anderson,* 902 S.W.2d at 700.

Appellant contends the Ordinance fails to give fair warning of the prohibited conduct because it fails to distinguish between touching and erotic touching. She argues that "[c]onduct which may be defined 'erotic' by some may not be viewed as such by others." Moreover, she maintains the Ordinance fails to provide guidance to law enforcement, who are called upon to determine whether the touching is erotic, thus requiring the entertainer to hold a permit. Appellant bases this argument on the testimony of Officer Cox, who testified that he "guessed" he could use "erotic" as an adjective to describe the manner in which appellant touched her buttocks.

Appellant's argument isolates the term "erotic" from the rest of the Ordinance. Although undefined in the Ordinance, the term "erotic" is neither vague nor indefinite as applied to appellant's conduct. In the context of the Ordinance, the term "erotic" describes how the entertainer touches specific body parts, the whole of which comprise a sexual activity.[7] The commonly understood meaning of "erotic"

is "of or causing sexual love, esp. tending to arouse sexual desire or excitement." The Oxford Encyclopedic English Dictionary 483 (1991); *see also* Webster's Ninth New Collegiate Dictionary 422 (1983) (defining erotic as "of, devoted to, or tending to arouse sexual love or desire"). Thus, erotic touching of a specified body part in the context of this Ordinance means touching a specified body part in such a manner that would tend to arouse sexual desire or excitement. Appellant's argument also isolates Officer Cox's equivocal answer regarding the erotic manner from the rest of his testimony. The record reflects that Cox observed appellant touch her buttocks while performing a dance between the legs of a male customer. He testified that appellant was dancing in front of the customer "approximately the distance of his knees facing him with her hands over head at points in time and just kind of moving her body back and forth and her hips." As the music played, appellant turned around, bent over and continued to dance. "She had her right hand that she caressed or moved very slowly on her buttocks, the right side." Her hands appeared to rub her buttocks in a slow, deliberate manner. When the officer was asked if he would "use erotic as an adjective to the manner" of appellant's movement with her hand, the following exchange occurred:

A. I guess it could be, it was slow, a very slow movement.

Q. Well, I mean, was she—did she just brush her arm against her butt?

\* \* \* \* \*

A. It appeared to me that it was a slow motion rubbing, caressing.

Q. (By Ms. Bennett) Okay. And she wasn't just adjusting her bathing suit?

A. No, ma'am.

Q. And it was a slow and deliberate—

A. Yes, ma'am.

7. *See* text in Part IIB, *supra,* at page 917.

The language of the Ordinance is not unconstitutionally vague. It conveys a sufficient warning about the proscribed conduct when measured by a common understanding and practice. Appellant's eighth and ninth points of error are overruled.

## IV. SUFFICIENCY OF THE EVIDENCE

In her tenth through twelfth points of error, appellant contends the evidence is legally insufficient to support the conviction. In her thirteenth point of error, she challenges the factual sufficiency of the evidence.

### A. Judicial Notice of Ordinance

In her tenth point of error, appellant contends the evidence is legally insufficient to prove she committed a violation of the Ordinance because the State failed to offer proof of the Ordinance at trial. Without proof of the Ordinance in the record, appellant maintains, this court may not take judicial notice of the ordinance. *See Blackwell v. Harris County*, 909 S.W.2d 135, 140 n. 2 (Tex.App.—Houston [14th Dist.] 1995, writ denied) (stating court may take judicial notice of municipal ordinance when the ordinance is in verified form, as in that case); *City of Houston v. Southwest Concrete Const., Inc.*, 835 S.W.2d 728, 733 n. 5 (Tex.App.—Houston [14th Dist.] 1992, writ denied) (requiring municipal ordinances to be submitted in verified form to be part of appellate record). She argues without taking judicial notice of the Ordinance, we cannot determine the sufficiency of the evidence to sustain her conviction. *See Howeth v. State*, 645 S.W.2d 787, 788 (Tex.Crim.App. 1983).

Rule 204 of the Texas Rules of Evidence applies to all courts, including this court. It authorizes a court upon its own motion to take judicial notice of a municipal ordinance. *See* TEX.R.EVID. 204. Although in *Blackwell* and *Southwest Concrete, supra*, we stated that we would take judicial notice of a municipal ordinance if a verified copy of the ordinance was in the

appellate record, we are not bound by *stare decisis* to follow that rule in every case. *See Dedonato v. State*, 789 S.W.2d 321, 325 (Tex.App.—Houston [1st Dist.] 1990), *affirmed*, 819 S.W.2d 164, 165–66 (Tex.Crim.App.1991).

Here, we take judicial notice of the Ordinance for two reasons. First, the trial court took notice of the Ordinance and appropriately applied its provisions in its charge to the jury. For this reason, neither party disputes that the jury reached its verdict on a correct statement of the law. Second, the provisions of the Ordinance are readily available to this court. Appellant recites the pertinent provisions in her brief and the City of Houston posts its ordinances, including the pertinent provisions of Ordinance 97–75 on its Internet web page. Consequently, this court may readily verify the pertinent sections of the Ordinance and review the sufficiency of the evidence in light of these provisions. Accordingly, we overrule appellant's tenth point of error.

### B. Legal Sufficiency

In her eleventh and twelfth points of error, appellant contends the evidence is legally insufficient to support her conviction. In point of error eleven, she contends the evidence is insufficient to show that she did not have a valid permit issued by the City of Houston. In point of error twelve, she maintains the evidence is insufficient to show she acted as an entertainer as charged in the information.

In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and decide whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Wilson v. State*, 7 S.W.3d 136, 141 (Tex.Crim.App.1999) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). We accord great deference "to the responsibility of the trier of fact [to fairly] resolve conflicts in the

testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *See Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996) (quoting *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781). "We presume that any conflicting inferences from the evidence were resolved by the jury in favor of the prosecution, and we defer to that resolution." *Id.* at n. 13, 99 S.Ct. 2781 (quoting *Jackson*, 443 U.S. at 326, 99 S.Ct. 2781).

▆▆▆ In point of error eleven, appellant complains the State failed to prove that "no permit had been issued by the Chief of Police of the City of Houston or his designee" because neither the Chief of Police nor his designee testified to the same at trial. The record, however, reflects that Officer Cox asked appellant if she had a permit. He testified that she did not. Appellant voiced no objection to Cox's testimony or the State's failure to establish a foundation for this testimony.[8] A rational trier of fact could have found that appellant did not have a permit to act as an entertainer. Therefore, we overrule her eleventh point of error.

▆▆▆ In her twelfth point of error, appellant contends the evidence is legally insufficient to find that she acted as an entertainer; *i.e.*, that she engaged in an erotic touching of her buttocks. As discussed in points of error eight and nine, Cox's descriptive testimony of appellant's conduct is sufficient for a rational juror to find that she acted as an entertainer. Accordingly, we overrule appellant's twelfth point of error.

### C. Factual Sufficiency

▆▆▆ In her thirteenth point of error, appellant contends "the jury verdict should be set aside because it is contrary to the overwhelming weight of the evidence." Appellant contends that for her conviction to stand, "the facts must sufficiently establish that the touching was 'erotic' and that the absence of a permit was because one had not been issued by the Chief of Police of the City of Houston, or his designee."

▆▆▆ In reviewing the factual sufficiency of the evidence, we view all the evidence in a neutral light, both for and against the finding, and set aside the verdict only if "proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim. App.2000). We "are not free to reweigh the evidence and set aside a jury verdict merely because the judges feel that a different result is more reasonable." *Clewis*, 922 S.W.2d at 135. In other words, we will not substitute our judgment for that of the jury. *See id.* at 133. To do so would violate a defendant's right to trial by jury. *See id.*

Appellant contends the testimony of Rauf Tony Kabolati, the general manager of the cabaret, and of Officer Cox, the arresting officer, indicate that appellant did not engage in erotic touching and that Cox was not a designee of the chief of police for the purpose of issuing permits. Kabolati testified that when asked, Cox would not tell him how appellant violated the Ordinance. Kabolati claims Cox stated that appellant would be notified when they arrived downtown. Kabolati attested that Cox did not inspect any records that contained information about the women working at the cabaret. He also testified that he had no personal knowledge about the particular dance appellant performed in front of Cox.

As noted in points of error eight and nine, Cox testified at trial about the dance appellant performed between the legs of a male customer and the manner in which

---

8. Although appellant did not object to the testimony when offered on the basis of Rule 1005 of the Texas Rules of Evidence, she moved for an instructed verdict on the basis that the State failed to offer any evidence from the Chief of Police or his designee to show that appellant did not have a permit.

she touched her buttocks. He also testified that he knew on the day he observed appellant's performance that she had been engaging in sexual activity and he filed charges for that behavior. He further testified appellant's conduct was the basis for asking her for the permit.

In other testimony, Cox attested that the initial police report was made by another officer. The report simply lists appellant as one of several women arrested for lack of a permit under the Ordinance. The report indicates at the time of the arrest, appellant was dressed in a black bikini bottom and changed to a black dress and shoes. Cox dictated a supplement to the report, in which he detailed his investigation of appellant's conduct. The supplement states, in pertinent part:

> Ms. Flores was performing a table dance for an unknown black male patron. This black male was sitting in a chair with his legs spread apart while Ms. Flores proceeded to dance between his legs, facing him, and shaking her breasts near his face. Ms. Flores then turned around, still between this patron's legs, and bent over placing her buttocks near his face. Ms. Flores danced much closer to her customer than Ms. Costillo did. Both female dancers had on bikini bottoms and no tops. The music ended and both female dancers picked up their tops and walked toward where I was standing.... I also asked Ms. Flores to accompany me to the back dressing room, when Ms. Flores asked if she could return change to the black male patron she had been dancing for. Ms. Flores' request was allowed and at which time myself and both female dancers proceeded to the female dressing room, where they were left in the care and custody of officers Andrews and Reaves.[9]

Cox acknowledged that this supplement, prepared shortly after appellant's arrest, contained no information about the specific manner in which appellant violated the Ordinance. Cox conceded that the act at issue—erotic touching of the buttocks—was not in the report and admitted the omission was his mistake. Yet, Cox attested, the first time he let anyone know that something was missing in the report was a few days before trial when he discussed the facts of the case with the prosecutor. The discrepancies between Cox's supplemental report that did not state appellant's touching was erotic, and his testimony at trial, which did so state, go to the credibility of his testimony, and not to the weight of the evidence.

The record here does not reflect that proof of appellant's guilt is so obviously weak as to undermine confidence in the jury's determination or that proof of her guilt is greatly outweighed by contrary proof. Accordingly, the evidence is factually sufficient to support her guilt. Appellant's thirteenth point of error is overruled.

## V. Batson Hearing

 In her fourteenth point of error, appellant claims "the trial court committed reversible error in refusing to conduct a hearing following appellant's objection to the State's use of peremptory challenges in a racially discriminatory manner." Excluding a person from jury service because of race violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *See* U.S. Const. amend. XIV; *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); Tex.Code Crim.Proc.Ann. art. 35.261 (Vernon 1989) (codifying *Batson* standard).

9. Although discussed at the hearing on appellant's motion to quash the information, the supplemental report was not admitted into evidence at trial. We recognize in conducting a factual sufficiency review, we consider the evidence weighed by the jury. *See Johnson v.* *State,* 23 S.W.3d 1, 7 (Tex.Crim.App.2000). We include the report only to clarify appellant's argument that the evidence was factually insufficient to support a finding that she engaged in erotic touching.

■ A party challenging the opposing party's exercise of peremptory strikes on racial grounds bears the ultimate burden to persuade the trial court regarding racial motivation. *See Ford v. State,* 1 S.W.3d 691, 693 (Tex.Crim.App.1999) (citing *Purkett v. Elem,* 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995)). The same party bears the initial burden of production to establish a prima facie case of racial discrimination by the State against an eligible venire member. *See id.; Batson,* 476 U.S. at 97, 106 S.Ct.1712. "To make such a case, the defendant must show that relevant circumstances raise an inference that the State made a race-based strike." *Wardlow v. State,* 6 S.W.3d 786, 787 (Tex.App.—Austin 1999, no pet.). The burden is not onerous; only minimal evidence is needed to support a rational inference. *See id.* Once a prima facie case is established, the burden of production shifts to the challenged party to give neutral reasons for the strike. *See Ford,* 1 S.W.3d at 693. The prosecutor's explanation must be clear and reasonably specific, and must contain legitimate reasons for the strike related to the case. *See Wardlow,* 6 S.W.3d at 787. Once a race-neutral explanation is proffered, the challenging party must persuade the trial court that the reasons proffered were pretextual and the strikes are in fact racially motivated. *See Ford,* 1 S.W.3d at 693–94; *Wardlow,* 6 S.W.3d at 787.

In this case, appellant objected to two of the State's peremptory strikes on the ground that both venire persons were African American and were part of a racially recognizable group; therefore, "there was no racially neutral reason to challenge those two perspective jurors." The trial court queried whether appellant was saying that she was part of the same racial group. Appellant explained that she was Hispanic and not part of the same racial group but noted that membership in the same racial group was not mandatory to a *Batson* challenge. The trial court overruled the objection and then asked the State to give reasons for the strike for the record. The State responded as follows:

MS. BENNETT: Okay. For the record, I struck Juror No. 1, he was previously on a criminal jury that was unable to reach a verdict. And I struck Juror No. 6 just because I didn't feel like he and I had—

MR. LARSON: Juror No. 5 and 6 came from me. I thought they looked skeptical when she was talking to them about the case. They both had their eyes down, looking away, when the rest of the venire were watching her, and I thought they were rather skeptical of her case, so that's where No. 6 came from.

THE COURT: All right. Denied.

■ On appeal, appellant contends she made a prima facie case of racial discrimination on the basis of her objection that the two stricken venire members were African American and, therefore, she was entitled to a hearing on her *Batson* challenge. We need not review the issue of whether appellant established a prima facie case because the issue is now moot. "[O]nce the State's [sic] offers explanations for striking the contested venire members, and the trial judge rules on the ultimate question of intentional discrimination, the issue of whether the defendant made a *prima facie* case is now moot and, therefore, not subject to appellate review." *Malone v. State,* 919 S.W.2d 410, 412 (Tex. Crim.App.1996) (emphasis in original). In this case, after denying appellant's objection, the trial court urged the State to articulate reasons for the contested peremptory strikes. The State then articulated its race-neutral reasons for the strikes and the trial court ruled on the ultimate question of intentional discrimination without hearing argument from appellant.

Although cursory, the trial court conducted a hearing by asking the State to proffer for the record its reasons for the strikes. The court ruled on the issue without hearing evidence or argument from appellant that would impeach or refute the State's neutral explanation. Appellant,

however, did not ask to cross-examine the prosecutor or offer any evidence following the State's race-neutral explanation for the peremptory challenges. *See Salazar v. State*, 795 S.W.2d 187, 192–93 (Tex.Crim. App.1990); *Williams v. State*, 767 S.W.2d 872, 874 (Tex.App.—Dallas 1989, pet. ref'd). Moreover, appellant did not voice an objection at trial that she was denied the opportunity to present evidence or argument and she did not seek to perfect a bill of exceptions. *See Salazar*, 795 S.W.2d at 193.

A *Batson* challenge is subject to principles of ordinary procedural default. *See Batiste v. State*, 888 S.W.2d 9, 17 n. 5 (Tex.Crim.App.1994) (as applied to ineffective assistance of counsel); *Marin v. State*, 851 S.W.2d 275, 279–80 (Tex.Crim. App.1993) (explaining forfeitable rights), *overruled in part on other grounds by Cain v. State*, 947 S.W.2d 262 (Tex.Crim. App.1997); *Mathews v. State*, 768 S.W.2d 731 (Tex.Crim.App.1989) (declining to hear *Batson* complaint because not preserved at trial). "The trial judge as institutional representative has no duty to enforce forfeitable rights unless requested to do so.... Accordingly, an important consequence of a party's failure to petition enforcement of his forfeitable rights in the trial court is that no error attends failure to enforce them and none is presented for review on appeal." *Marin*, 851 S.W.2d at 279–80 (citing *Rezac v. State*, 782 S.W.2d 869, 870–871 (Tex.Crim.App.1990)). Because appellant did not ask to cross-examine the prosecutor or offer evidence refuting the race-neutral explanation for the strikes, and she did not object to the lack of an opportunity to do the same, she forfeits review of the issue on appeal.[10] Therefore, we overrule appellant's fourteenth point of error.

10. Appellant does not seek review of whether the trial court erred in allowing the State to peremptorily strike the two African American venire members. Without meaningful cross-examination or evidence to rebut a facially neutral explanation for the strike, it is difficult

Because we find no reversible error, we affirm the judgment of the court below.

to show on appeal that one met her burden of persuasion to successfully challenge the State's peremptory strikes at trial. *See Ford v. State*, 1 S.W.3d 691, 693–94 (Tex.Crim.App. 1999).