IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00386-CR

 

Richard Oduol,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 

 



From the County Criminal Court at Law No. 4

Harris County, Texas

Trial Court No. 1319226

 



MEMORANDUM  Opinion



 








          A jury convicted Richard Oduol of
interfering with the duties of a public servant, assessed his punishment at 30
days’ confinement, and recommended that he be placed on community supervision. 
The court followed the jury’s recommendation.  Oduol, acting pro se,
contends in seven issues that: (1) the prosecutor improperly used information obtained
from Oduol during plea negotiations; (2) he was denied a jury of his peers; (3)
the court abused its discretion by sustaining certain of the prosecutor’s
objections; (4) the court abused its discretion by excluding evidence favorable
to the defense; (5) the prosecutor made a “doctored closing statement”; (6) the
court abused its discretion by permitting the prosecutor to ask “directed
questions”; and (7) the prosecutor’s closing argument contained “false
allegations” which Oduol was not permitted to clarify before the jury began its
deliberations.[1] 
We will affirm.

Procedural Background

          Oduol represented himself at trial and
represents himself on appeal.  Because the record did not reflect that he has
waived the right to counsel in writing or that he had been admonished of the
dangers and disadvantages of self-representation and because Oduol challenged
the accuracy of the reporter’s record, we abated the appeal for the trial court
to resolve these issues.  See Oduol v. State, No. 10-05-00386-CR, slip
op. at 2-3 (Tex. App.—Waco May 10, 2006, order) (per curiam) (not designated
for publication).

          Pursuant to our abatement order, the
trial court conducted a hearing in which the trial judge recalled that he had
“discussed at length, perhaps on several occasions, your representing yourself
was not a good idea.”  Oduol stated that he recalled those discussions.  Oduol
also recalled being provided a “Waiver of Attorney” document which explains in
detail the dangers and disadvantages of self-representation.  However, Oduol
stated that he never signed this document and never signed a written waiver of counsel. 
Oduol further said that he represented himself at trial only because the court
had concluded that he owned too much property to qualify for court-appointed
counsel.

          After this hearing, the trial court
prepared written findings of fact and conclusions of law.  In these findings
and conclusions, the court reviewed each of Oduol’s complaints regarding the
accuracy of the reporter’s record and found them to be without merit. 
Regarding self-representation, the court noted that “a three page Faretta
warning” was given to Oduol before he was allowed to proceed pro se. 
The court further recited that “Oduol was simply adamant about his pro se
status.”

Factual Background

          Oduol’s prosecution stems from an
incident at his apartment complex.  His van had been towed the night before
after another resident called to complain that it was blocking two cars.  Oduol
went to the apartment office to have his van returned.  He first talked with
Barbara Valdes who described him as “aggravated” when he first came into the
office.  She told him that the apartment would not make arrangements for the
return of his van because it had been illegally parked.  This made Oduol
angrier, and he told Valdes he wanted to speak to the manager.  When Valdes
told Oduol that the manager could not see him at that time, he became even more
agitated and “got louder.”

          The manager Linda Brunson came out of
her office to discuss the matter with him.  Brunson told him that if he did not
calm down that he would have to leave the office.  When Oduol did not, Brunson
told him to leave or she would call the police.  He refused, so she called a
police officer who lived in the apartment complex and who also served as a
“courtesy officer” for the complex.

          Officer Matt Hong came to the office
within five minutes.  He told Oduol he needed to leave the office, but Oduol
refused.  Hong then cuffed Oduol and escorted him from the premises to a
parking lot to await a patrol car.  As Hong did this, Oduol was “yelling and
screaming at the top of his lungs.”  Hong told Oduol to sit down on a sidewalk,
but he refused.  Hong then “sat him down” and “told him not to get up.”

          Hong walked “about fifteen steps away”
and called the intake division of the district attorney’s office to discuss the
charges.[2] 
While Hong was on the phone, Oduol got up and “started walking towards [him] in
a fast manner.”  Hong and Oduol both fell to the ground as Hong tried to
restrain him.  Both suffered minor abrasions.  An ambulance responded at Hong’s
request and an emergency medical technician treated Oduol’s injury.  Oduol was
then taken to the county jail.  Hong called the district attorney’s office
again, and it was determined that Oduol would be charged with criminal trespass
and interfering with the duties of a public servant.

Jury Selection

          Oduol contends in his second issue
that he was denied a jury of his peers.  He explains in the argument section of
his brief that there were only three African Americans in the jury pool and the
State exercised peremptory challenges against all three.

          No record was made of the jury
selection process other than a hearing on the State’s challenges for cause.[3] 
Oduol made no written or oral objection to the composition of the petit jury
which heard his case.  Because Oduol failed to object, this issue has not been
preserved for appellate review.  See Tex.
R. App. P. 33.1(a)(1); Batiste v. State, 888 S.W.2d 9, 17 n.5 (Tex. Crim. App. 1994); Montgomery v. State, 198 S.W.3d 67, 77 (Tex. App.—Fort Worth
2006, pet. ref’d); Flores v. State, 33 S.W.3d 907, 926 (Tex.
App.—Houston [14th Dist.] 2000, pet. ref’d).  Accordingly, we overrule Oduol’s
second issue.

Information Obtained from Oduol

          Oduol contends in his first issue that
the prosecutor improperly used information obtained from him during plea
negotiations.  

          Oduol explains in his brief that,
after the trial court determined he was not eligible for court-appointed
counsel and after he demanded a jury trial, he met with the prosecutor to
discuss his case.  The prosecutor made a plea offer, which Oduol rejected, then
asked Oduol to explain why he considered himself to be innocent.  According to
Oduol, the prosecutor asked him to write his narrative explanation on a legal
pad so he could show it to the judge for consideration.  Oduol complied with
this request.[4]

          Oduol disputed the stated basis for
the towing of his van.  He stated that the tow truck driver came into the
apartment office about the same time he did on the date in question and went
straight to Brunson’s office.[5] 
According to him, “the argument” did not begin until Brunson, “to try to cover
for the wrecker driver,” said that a neighbor had called to complain about his
van blocking her car.  Oduol asked Brunson to call the police to resolve the
matter, but she declined.  While Oduol was writing down what happened, he felt
Hong’s hand on his shoulder.  Hong told Oduol that he “was going to pay for
making them wake him up.”  Oduol says the sidewalk was too hot to sit on, so he
tried to squat, which caused Hong to come running toward him “screaming” to sit
back down.  He contends that Hong intentionally pushed his head against the
concrete to injure him and that, as a result of the blow, “I had a concussion
and was in a daze and my head was bleeding.”

          Oduol says that there were several
witnesses who observed the confrontation, but none would help.  He contends
that his injuries and the heat made him nauseated and he vomited from the rear
of the patrol car.  He also alleges that Hong told the EMT to treat his wound
rather than transport him to the hospital so the extent of his injuries would not
be “noted and recorded.”  He concludes by stating that the officer who
transported him to jail “felt that Officer Hong was in the wrong.”

          These are essentially the same
contentions Oduol explained in his opening statement to the jury and in his
trial testimony.  He contends that the prosecutor improperly used this
information by “coaching” witnesses.  However, Oduol did not raise this
objection at trial.  Thus, this complaint has not been preserved for appellate
review.  See Tex. R. App. P. 33.1(a)(1).

          Oduol also suggests that he was somehow
denied the ability to secure the attendance of witnesses who would verify his
version of the facts.  To the extent Oduol’s complaint is premised on the
unavailability of witnesses, he has not properly preserved this complaint for
appellate review.

          To secure the attendance of a witness
at trial, a defendant must file an application for subpoena with the clerk of
the trial court.  See Tex. Code
Crim. Proc. Ann. art. 24.03(a) (Vernon Supp. 2006).  If the witness
fails or refuses to appear, the trial court will issue a writ of attachment.  Id. art. 24.12 (Vernon 1989); Sturgeon v. State, 106 S.W.3d 81, 89-90 (Tex. Crim. App. 2003).  A defendant may also request a continuance if a subpoenaed witness
fails to appear for trial.  See Tex.
Code Crim. Proc. Ann. art. 29.06 (Vernon 2006); Harrison v. State,
187 S.W.3d 429, 434 (Tex. Crim. App. 2005).

          Here, Oduol did none of these things
to secure the attendance of witnesses at trial.[6] 
Thus, he has failed to preserve any complaint regarding the unavailability of
witnesses for appellate review.  See Tex.
R. App. P. 33.1(a)(1).  For the foregoing reasons, we overrule Oduol’s
first issue.

Exclusion of Evidence

          Oduol contends in his third and fourth
issues respectively that the court abused its discretion by sustaining certain
of the prosecutor’s objections and by excluding evidence favorable to the
defense.

          Oduol first complains that the trial
court sustained several of the prosecutor’s objections that questions had been
“asked and answered.”  Our review of the record reveals that the prosecutor
made this objection three times: twice during Oduol’s cross-examination of
Officer Hong and once during his cross-examination of apartment employee David
Oliver.

          On the first occasion, Oduol asked
Hong twice whether Hong recalled getting off the phone and informing Oduol that
he had just gotten off the phone with the D.A. and was charging Oduol with
trespassing.  Hong answered this question both times, stating that he told Oduol
at that point that he was being charged with trespassing and interfering with
the duties of a public servant.  After Hong answered the second time, the
prosecutor objected that the question had been asked and answered.  The court
did not rule on the objection but essentially repeated the officer’s answer to
the question.

          On the next occasion, Oduol asked
Hong, “And when you responded to the call in the office and they informed you
about what had happened, what were you coming to do then?”  Instead of
sustaining the prosecutor’s objection, the court rephrased the question and
asked Hong, “And so, after—as you’re coming towards the office, first thing,
what’s your initial intent as you’re walking towards the office?”  Hong
answered, “Coming to discover what’s going on.”  Thus, the court did not
sustain the prosecutor’s objection, and Hong answered the question.

          On the final occasion when the
prosecutor objected that a question had already been asked and answered, Oduol
asked Oliver, “And do you recollect saying that I don’t want to get involved
because I don’t want to get in trouble?”  The prosecutor objected to the
relevance of this question.  In reply, the court rephrased the question, “Did
you ever tell Mr. Oduol that you can’t use my phone, like I don’t want to get
in trouble here?”  Oliver responded, “No, I never said that.”  Oduol then
asked, “And you don’t recall at all saying that?  That I don’t want to get in
trouble . . . ?”  When the prosecutor objected that this question had been
asked and answered, the court instructed Oduol to move on to something else.  Thus,
the court implicitly sustained the prosecutor’s objection.

          On these three occasions, it appears
that the questions about which Oduol complains were answered despite the
State’s objections.  Thus, we cannot say that the court abused its discretion
by the manner in which it ruled on the objections.  See Thomas v. State,
137 S.W.3d 792, 797 (Tex. App.—Waco 2004, no pet.).

          Oduol next complains that the court
abused its discretion by sustaining the prosecutor’s relevance objection to a
question about Hong’s decision to have the EMT treat Oduol’s injury at the
scene then transport him to jail rather than the hospital.  Hong conceded on
cross-examination that he may have told the EMT to “patch that up,” referring
to Oduol’s head injury, without knowing whether Oduol had a concussion.  The
cross-examination continued as follows:

Q:      Yet you just told them to patch it up.

 

A:      I have seen people shot before and told
them to patch it up.

 

Q:      But yet you made the decision and told
the EMT just to—

 

Prosecutor:    Objection, Your Honor.  This is
irrelevant.

 

The Court:     Yes.  Something else.  Sustained.

 

          Oduol had already established that
Hong instructed the EMT to merely “patch up” Oduol’s injury without a
comprehensive medical evaluation of Oduol’s condition.  Thus, the court did not
abuse its discretion by sustaining the prosecutor’s objection when Oduol asked
the question again.  See Thomas, 137 S.W.3d at 797.

          He contends, however, that he should
have been allowed to continue this line of questioning to demonstrate his claim
of police brutality.  However, Oduol did not make an offer of proof regarding
the substance of any additional evidence he sought to introduce.  See Tex. R. Evid. 103(a)(2), (b); LaHood
v. State, 171 S.W.3d 613, 621 (Tex. App.—Houston [14th Dist.] 2005, pet.
ref’d).  Thus, he has failed to preserve any complaint regarding the court’s
exclusion of this line of questioning.  Id.

          Finally, Oduol complains that the
court abused its discretion by failing to publish photographic evidence of his
injuries to the jury.  During Oduol’s cross-examination of Hong, a photograph
was marked as Defendant’s Exhibit No. 1 and admitted in evidence.  Hong
testified that the photograph was a fair representation of the injury Oduol
sustained.  However, Oduol never asked that the exhibit be published to the
jury.  Thus, this complaint has not been preserved for appellate review.  See
Tex. R. App. P. 33.1(a)(1); Gonzales
v. State, 929 S.W.2d 546, 550 (Tex. App.—Austin 1996, pet. ref’d).

          For the foregoing reasons, we overrule
Oduol’s third and fourth issues.

Directed Questioning

          Oduol contends in his sixth issue that
the court abused its discretion by permitting the prosecutor to ask “directed
questions.”  He explains in the argument portion of his brief that this
complaint concerns the prosecutor propounding “[d]irected questioning to lead
the witnesses to recall what they had been coached to say.”  Because Oduol did
not make this objection at trial, this complaint has not been preserved for
appellate review.  See Tex. R. App.
P. 33.1(a)(1); Mayfield v. State, 803 S.W.2d 859, 863 (Tex. App.—Corpus Christi 1991, no pet.).  Accordingly, we overrule Oduol’s sixth issue.

Closing Argument

          Oduol contends in his fifth and
seventh issues respectively that the prosecutor made a “doctored closing
statement” and the prosecutor’s closing argument contained “false allegations”
which Oduol was not permitted to clarify before the jury began its
deliberations.  Because Oduol did not raise any objection to the prosecutor’s
closing argument, this complaint has not been preserved for appellate review.  See
Tex. R. App. P. 33.1(a)(1); Bible
v. State, 162 S.W.3d 234, 248 (Tex. Crim. App. 2005).  Accordingly, we
overrule Oduol’s fifth and seventh issues.

Jury Charge

          Although Oduol does not raise this
complaint in his list of “issues presented,” he does criticize the court’s
decision to strike from the charge one of the alternative allegations regarding
the manner and means by which he committed the offense of interfering with the
duties of a public servant.

          The information alleges in separate
paragraphs that Oduol committed this offense “by refusing to follow
directions,” “by failing to remain seated,” and “by walking away from Officer
M. K. Hong.”  The court did not include the last allegation in the charge. 
When the court advised Oduol that this allegation would not be included in the
charge and asked whether that sounded good to him, Oduol affirmatively nodded.

          Oduol did not object to the proposed
charge and essentially indicated that he had no objection.  In this situation,
a case will not be reversed on appeal unless there is an error in the charge
which caused the defendant to suffer “egregious harm.”  Ngo v. State,
175 S.W.3d 738, 743-44 (Tex. Crim. App. 2005).  Here, there is no error.  A “non-essential
element allegation [may] be excluded from [a] hypothetically correct charge.”  Gollihar
v. State, 46 S.W.3d 243, 256 (Tex. Crim. App. 2001) (citing Rosales v.
State, 4 S.W.3d 228 (Tex. Crim. App. 1999)).  Moreover, the State may
abandon allegations of alternative means of committing an offense.  Alston
v. State, 175 S.W.3d 853, 854-55 (Tex. App.—Waco 2005, no pet.).

          For the foregoing reasons, we hold
that the court did not err by excluding the allegation that Oduol committed the
offense “by walking away” from the jury charge.

We affirm the judgment.

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray concurs in the judgment without a separate opinion)

Affirmed

Opinion delivered and
filed January 10, 2007

Do not publish

[CR25]

 

          









[1]
          This is the Court’s paraphrase
of the issues presented by Oduol, based on the argument presented in his
brief.  See Tex. R. App. P. 38.9
(briefing rules should be construed liberally); White v. State, 50
S.W.3d 31, 45 (Tex. App.—Waco 2001, pet. ref’d) (briefs should be construed
liberally); Barnes v. State, 832 S.W.2d 424, 426 (Tex. App.—Houston [1st
Dist.] 1992, orig. proceeding) (pro se pleadings should be reviewed
“with patience and liberality”).  The issues in Oduol’s own words, as stated on
page 3 of his brief, are:

 

i)                   
prosecutor attempt to avoid
trial and being punitive by using my revealed defense to his betterment.

ii)                 
Jury not of my peers

iii)               
Objections to subjects
relevant to the case

iv)                
Deletion of my strong points
that could have thrown the case out

v)                  
Evidence of doctored closing
statement

vi)                
Obvious Prosecutors directed
questioning

vii)              
Unchallenged Prosecutors
charges in his closing statement.





[2]
          Officer Hong explained that it
is standard procedure in Harris County to discuss the charges with the district
attorney’s office to see if they will accept the case and if any additional
information is needed.

 





[3]
          Oduol recognizes in his brief
that no record was made.  Because he did not object to the court reporter’s
failure to record the entire voir dire, he has failed to preserve for appellate
review any complaint regarding such failure.  See Valle v. State, 109
S.W.3d 500, 508-09 (Tex. Crim. App. 2003); Washington v. State,
127 S.W.3d 111, 114-15 (Tex. App.—Houston [1st Dist.] 2003, no pet.).





[4]
          Oduol states in his brief that
he “wrote down the events that occurred on the day that I was arrested,” but he
does not explain exactly what “events” he recorded on the legal pad. 
Nevertheless, we presume that he wrote something similar to the factual
statements provided in pages 10-19 of his brief under the heading, “Events That
Led to My Arrest.”  See Tex. R.
App. P. 38.9; White, 50 S.W.3d at 45; Barnes, 832 S.W.2d at
426.

 





[5]
          Valdes confirmed that the tow
truck driver was in the office that morning, but Brunson did not recall him
being there.





[6]
          Oduol says in his brief that the
court dismissed his questioning of a “witness for not forwarding a subpoena.” 
However, he does not identify that witness; our review of the record does not
reveal such an event occurring; and the clerk’s record does not contain a
subpoena application.