**Patricia RIVERA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Telia D. Casel, Appellant,**

v.

**The State of Texas, Appellee.**

**Joanna Lynn Walton, Appellant,**

v.

**The State of Texas, Appellee.**

**Nos. 01–10–00616–CR, 01–10–00617–CR, 01–10–00618–CR, 01–10–00619–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

July 7, 2011.

662

R. Trent Gaither, Houston, for Appellant.

Eric Kugler, Asst. Dist. Atty. of Harris County, Houston, for State.

Panel consists of Justices KEYES, HIGLEY, and YATES.*

## OPINION

LAURA CARTER HIGLEY, Justice.

These four appeals arise from orders denying relief in pretrial habeas corpus proceedings in which appellants, Patricia Rivera, Telia D. Casel, and Joanna Lynn Walton, challenge the constitutionality of City of Houston Ordinance No. 97–75, under which each is being prosecuted. *See* TEX.R.APP. P. 31. Appellants present four identical issues on appeal.[1]

We affirm the trial court's order denying habeas relief in each appeal.

## Background

Appellants, Patricia Rivera, Telia D. Casel, and Joanna Lynn Walton, have been charged with Class A misdemeanor offenses for violating certain provisions of City of Houston Ordinance No. 97–75 ("the Ordinance").[2] The Ordinance regulates sexually-oriented businesses and criminalizes certain conduct by persons employed by those establishments.

Here, the State charged Rivera, Casel, and Walton by information with the misdemeanor offense of "intentionally and knowingly" acting as an "entertainer" at Legs Cabaret, "a sexually oriented enterprise, namely, an adult cabaret" without "holding a valid permit ... as required under Section 28–253(a) of the Code of Ordinances of the City of Houston."[3] Each appellant was also charged with violating the "no touch provision" of the Ordinance, which makes it "unlawful for any entertainer to touch a customer or the clothing of a customer while engaging in entertainment or while exposing any specified anatomical areas or engaging in any specified sexual activities."[4] Specifically, Casel and Walton were charged with "intentionally and knowingly" touching a customer while "engaging in entertainment, namely, a dance, involving the display and exposure of a portion of the human buttock" and "a portion of the human breast immediately below the top of the areola." Rivera was charged with "intentionally and knowingly" touching a customer while "engaging in entertainment, namely, a dance, involving the display and exposure of the fondling and touching of the female breast."

Appellants filed individual applications for pretrial writ of habeas corpus in which they challenged the constitutionality of the Ordinance. Each asserted that the Ordinance is unconstitutionally vague and overbroad and argued that it violates the preemption and proportionality protections of

---

* The Honorable Leslie Brock Yates, former Justice, Court of Appeals, Fourteenth District of Texas at Houston, participating by assignment.

1. Appellate cause numbers 01–10–00616–CR and 01–10–00617–CR arise from the trial court's denial of the habeas relief sought by appellant, Patricia Rivera. Appellate cause numbers 01–10–00618–CR and 01–10–00619–CR relate to the denial of the habeas relief sought by appellants, Telia D. Casel and Joanna Lynn Walton, respectively. All four appellants are being prosecuted pursuant to City of Houston Ordinance No. 97–75. In the trial court, appellants sought the same habeas relief based on identical grounds and arguments. Appellants also raise identical arguments and issues on appeal. Therefore, for purposes of judicial economy, we consider the appeals together.

2. The Ordinance has been codified in Chapter 28, Articles II, III, and VIII of the City of Houston's Code of Ordinances.

3. HOUSTON, TEX., CODE OF ORDINANCES, No. 97–75, § 28–253(a).

4. HOUSTON, TEX., CODE OF ORDINANCES, No. 97–75, § 28–258(a).

the state and federal constitutions. The trial court issued the writs and conducted a hearing on the applications. Following additional briefing by the parties, the trial court denied the requested habeas relief in each cause and filed conclusions of law in support of its rulings.

These appeals followed in which appellants challenge the trial court's denial of the requested habeas relief. In four issues, appellants raise the following constitutional claims: (1) the Ordinance improperly limits expressive conduct protected by the First Amendment because it creates strict liability offenses without requiring a culpable mental state; (2) the Ordinance contains unconstitutionally vague terms; (3) the Ordinance unlawfully expands the City of Houston's authority and violates the doctrine of preemption; and (4) the Ordinance violates the doctrine of proportionality because the sentence is disproportionate to the offense.

## Pretrial Habeas Relief and Standard of Review

"The writ of habeas corpus is an extraordinary writ." *Ex parte Weise,* 55 S.W.3d 617, 619 (Tex.Crim.App.2001). Neither trial courts nor appellate courts should entertain applications for writ of habeas corpus when the applicant has an adequate remedy by appeal. *See id.* A claim that a statute is unconstitutional on its face is cognizable by pretrial habeas corpus; if there is no valid statute, the charging instrument is void. *See id.* at 620.

An appellate court reviews a trial court's decision to grant or deny an application for writ of habeas corpus under an abuse-of-discretion standard. *Kniatt v. State,* 206 S.W.3d 657, 664 (Tex.Crim.App. 2006). In reviewing the trial court's ruling, we view the evidence in the light most favorable to the trial court's ruling. *Ex parte Peterson,* 117 S.W.3d 804, 819 (Tex. Crim.App.2003), *overruled in part on other grounds by Ex parte Lewis,* 219 S.W.3d 335, 371 (Tex.Crim.App.2007). The trial judge, as fact finder at the writ hearing, is the exclusive judge of witness credibility. *Ex parte Amezquita,* 223 S.W.3d 363, 367 (Tex.Crim.App.2006). When, as here, the resolution of the ultimate questions turns on an application of legal standards, we review the trial court's ruling de novo. *Doyle v. State,* 317 S.W.3d 471, 475 (Tex. App.-Houston [1st Dist.] 2010, pet. ref'd).

## Culpable Mental State

In their first issue, appellants assert that the Ordinance is facially unconstitutional because it is overbroad.[5] We

5. The State contends that the orders denying habeas relief should be affirmed because a copy of the Ordinance is not included in the record, and appellants have not offered a certified copy of the Ordinance on appeal. We decline the State's invitation to affirm on this basis. Rule of Evidence Rule 204 applies to all courts, including this Court, and authorizes us, on our own motion to take judicial notice of a municipal ordinance. *See* Tex.R. Evid. 204; *see also Flores v. State,* 33 S.W.3d 907, 922 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). In *Flores,* our sister court took judicial notice on its own motion of Ordinance 97–75, the same ordinance at issue here. *See Flores,* 33 S.W.3d at 922. In taking judicial notice, the *Flores* court noted that (1) the trial court had taken judicial notice of the ordinance, (2) neither party disputed that the correct statement of the law had been applied by the trial court, (3) the appellant had recited the pertinent provisions of the ordinance in her brief, and (4) the pertinent provisions of Ordinance 97–75 were posted on the City of Houston's Internet web page. *See id.* The court reasoned, "Consequently, this court may readily verify the pertinent sections of the Ordinance and review the sufficiency of the evidence in light of these provisions." *Id.* Similarly, here, (1) the trial court noted in its conclusions of law that it took judicial notice of the Ordinance, (2) the parties do not dispute the content of the Ordinance, (3) appellants set out specific provi-

begin by noting that appellants correctly assert that the expressive conduct at issue—namely, nude and exotic dancing—is constitutionally protected conduct under the First and Fourteenth Amendments.[6] *See State v. Howard,* 172 S.W.3d 190, 192 (Tex.App.-Dallas 2005, no pet.).

■ In support of their overbreadth challenge, appellants point out that the Ordinance does not expressly require the State to prove a culpable mental state. Appellants argue that criminalizing expressive conduct without requiring a culpable mental state is a greater restriction than necessary to protect and further any governmental interests that the City of Houston may have in regulating the conduct.[7]

Appellants' contention that the Ordinance is overbroad hinges on their assertion that it does not require the State to prove a culpable mental state when prosecuting violations of the Ordinance. Thus, if the State is required to prove a culpable mental state when prosecuting an Ordi-

nance violation, appellants' overbreadth claim fails.

## A. Applicable Law

■ If the definition of an offense does not prescribe a culpable mental state, one is nevertheless required, unless the definition plainly dispenses with any mental element. TEX. PENAL CODE ANN. § 6.02(b) (Vernon 2011). If a statute plainly dispenses with a culpable mental state as an element of the offense, it is a strict liability statute. *See State v. Walker,* 195 S.W.3d 293, 298 (Tex.App.-Tyler 2006, no pet.). A person who commits an act in violation of a strict liability statute may be held criminally liable even though she might be innocent of any criminal intent. *See id.*

■ A court must look for a manifest intent to dispense with the requirement of a culpable mental state. *Aguirre v. State,* 22 S.W.3d 463, 472 (Tex.Crim. App.1999). The omission of a culpable mental state is a clear implication of the legislature's intent to dispense with a mental element in that section. *See Lomax v.*

sions of the Ordinance in their briefs, and (4) the City's website provides a link to the Ordinance. Thus, we can ascertain the relevant provisions of the Ordinance to review the issues appellants present. As did the *Flores* court, we take judicial notice of Ordinance 97–75. *See id.; see also* TEX.R. EVID. 204.

6. The Supreme Court of the United States explained that while nude dancing "falls only within the outer ambit of the First Amendment's protection," it is nevertheless protected as expressive conduct. *City of Erie v. Pap's A.M.,* 529 U.S. 277, 289, 120 S.Ct. 1382, 1391, 146 L.Ed.2d 265 (2000) (plurality opinion).

7. Appellants acknowledge that the *O'Brien* test for content-neutral restrictions on expressive conduct apply to their overbreadth challenge to the Ordinance. Under this intermediate-scrutiny test, we will find a content-neutral regulation to be constitutional, despite its adverse impact on the exercise of First Amendment rights, if (1) it is within the con-

stitutional power of the government; (2) it furthers an important or substantial governmental interest; (3) the asserted governmental interest is unrelated to the suppression of free expression; and (4) the incidental restrictions on alleged First Amendment freedoms are no greater than is essential to the furtherance of that interest. *United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968). Appellants' overbreadth claim focuses on the fourth factor. They contend that, without requiring a culpable mental state, the criminalization of the touching of a customer and the failure to obtain a permit is a greater restriction on free expression than is necessary to further the City of Houston's interests because it criminalizes accidental and inadvertent conduct. *See Hang On, Inc. v. City of Arlington,* 65 F.3d 1248, 1254 (5th Cir.1995) (rejecting this argument with respect to no touch provision of City of Arlington ordinance).

*State,* 233 S.W.3d 302, 304 (Tex.Crim.App. 2007); *Aguirre,* 22 S.W.3d at 473. Nonetheless, absent an express intent to dispense with the requirement of a culpable mental state, we must inquire whether such intent is manifested by other features of the statute. *Aguirre,* 22 S.W.3d at 473. These features include (1) the language of the statute, (2) the nature of the offense as *either malum prohibitum* or *malum in se,* (3) the subject of the statute, (4) the legislative history of the statute, (5) the seriousness of harm to the public, (6) the defendant's opportunity to ascertain the true facts, (7) the difficulty in proving a culpable mental state, (8) the number of prosecutions expected, and (9) the severity of the punishment. *Id.* at 472–76.

## B. Analysis

To address appellants' overbreadth challenge, we must first ascertain whether the Ordinance defines strict liability offenses or requires a culpable mental state. Because the Ordinance does not contain an affirmative culpable mental state, we must examine other features of the Ordinance to determine whether such intent is manifested. *See id.*

First, we review the language of the Ordinance. We presume that culpability is required because the Ordinance is silent regarding a culpable mental state for these offenses. *See Aguirre,* 22 S.W.3d at 472; *Walker,* 195 S.W.3d at 297. Moreover, no other provision in the Ordinance prescribes a mental state, an indicator that the omission was not necessarily intended to dispense with a culpable mental state. *Cf. Aguirre,* 22 S.W.3d at 473 (stating that if any section of statute prescribes a mental state while another section omits a mental state, it is presumed legislature intended to dispense with mental element in section lacking culpable mental state). The first factor weighs in favor of a conclusion that the Ordinance requires a culpable mental state.

Second, we examine the nature of the offense proscribed. *See id.* at 476. Strict liability is associated with civil violations that incur only a fine and also with criminal offenses that are characterized as *malum prohibitum. Aguirre,* 22 S.W.3d at 472; *see also Howard,* 172 S.W.3d at 193. *Mala prohibita* offenses are acts that are crimes merely because they are prohibited by statute, although they are not necessarily immoral. *See Howard,* 172 S.W.3d at 193.

In contrast, *mala in se* offenses are acts that are inherently immoral and require a culpable mental state. *See id.* The implication is that a strict liability offense must be *malum prohibitum. Aguirre,* 22 S.W.3d at 473. Courts have recognized that, under the common law, public nudity is classified as *mala in se* offense. *See Howard,* 172 S.W.3d at 193 (citing *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 568, 111 S.Ct. 2456, 2461, 115 L.Ed.2d 504 (1991); *Aguirre,* 22 S.W.3d at 477). It follows that the offenses involved here are most appropriately classified as *mala in se* offenses and require a culpable mental state. *See Howard,* 172 S.W.3d at 193. The second factor weighs in favor of a conclusion that the Ordinance requires a culpable mental state.

Third, we consider the subject of the Ordinance. *See Aguirre,* 22 S.W.3d at 476. Strict liability statutes are traditionally associated with the protection of public health, safety, or welfare. *Aguirre,* 22 S.W.3d at 473. The court of criminal appeals has upheld statutes that impose strict liability for offenses including air and water pollution, driving while intoxicated, sale of horse meat for human consumption, adulteration of food, and speeding. *Id.* at 475 & n. 47; *Walker,* 195 S.W.3d at 298. The Ordinance involved here regulates the operation of sexually oriented businesses. The class of public safety statutes that

appellate courts have found to impose strict liability comprises statutes that punish dangerous activities that may result in serious physical injury or death to members of the public. *Walker,* 195 S.W.3d at 298 (citing *Aguirre,* 22 S.W.3d at 475 & n. 47). The potential harm from violations of the Ordinance is not of that nature. The third factor weighs in favor of a conclusion that the Ordinance requires a culpable mental state.

The fourth factor identified in *Aguirre* is the legislative history of the statute. *See Aguirre,* 22 S.W.3d at 475. The provisions of the Ordinance involved here were added by amendment to the already existing sexually oriented business ordinance in 1997. *See N.W. Enters. Inc. v. City of Houston,* 352 F.3d 162, 172 (5th Cir.2003) (discussing history of Ordinance No. 97–75, including 1997 amendments). However, the amending of the statute without adding a mental state does not rise to the level of "a manifest intent to dispense with the requirement of a culpable mental state." *Walker,* 195 S.W.3d at 299 (citing *Aguirre,* 22 S.W.3d at 472; *State v. Abdallah,* 64 S.W.3d 175, 179 (Tex.App.-Fort Worth 2001, pet. ref'd).)

Section 25–258(a), which makes it illegal for an entertainer to touch a customer, is entitled "Conduct of Employee." HOUSTON, TEX., CODE OF ORDINANCES, No. 97–75, § 28–258(a). Arguably, the term "conduct" connotes purposeful action by the entertainer, which in turn indicates that a culpable mental state was contemplated. This factor weighs in favor of a conclusion that the Ordinance requires a culpable mental state.

Fifth, we examine the seriousness of the harm to the public that may be expected to follow from the forbidden conduct. *See Aguirre,* 22 S.W.3d at 476. Generally, the more serious the consequences to the public, the more likely the legislature intended to impose liability without regard to fault. *See Walker,* 195 S.W.3d at 299 (citing *Thompson,* 44 S.W.3d at 180). In most strict liability offenses, the statutes protect unwitting and unwilling members of the public from the noxious and harmful behavior of others in situations in which it would be difficult for members of the public to protect themselves. *See id.* (citing *Thompson,* 44 S.W.3d at 180). Such statutes involve serious risk to the public, including serious physical injury or death. *See id.* Examples of such strict liability offenses are speeding, driving while intoxicated, adulteration of food, and air and water pollution. *See id.* Here, as recognized by the Fifth Circuit Court of Appeals, the Ordinance is designed to protect the public from criminal activity, such as prostitution, lewd conduct, indecent exposure, and narcotics violations that are the secondary effects of operating a sexually oriented business.[8] *See N.W. Enters. Inc.,* 352 F.3d at 176 & n. 7. While they are significant, such concerns are not of the same nature as recognized strict liability offenses that involve the risk of serious bodily injury and death. Accordingly, the fifth factor weighs in favor of a conclusion that the Ordinance requires a culpable mental state.

---

8. As appellants point out, no evidence was offered in the trial court to establish the purpose behind enacting the Ordinance. As stated by the Fifth Circuit in *N.W. Enters. Inc. v. City of Houston,* "[t]he City need not relitigate this issue every time its [sexually oriented business] ordinances are challenged." 352 F.3d 162, 176 (5th Cir.2003). In other words, the City need not establish in each case in which the constitutionality of the Ordinance is challenged that "predominate concern was to regulate the secondary effects of the [sexually oriented businesses]" when such legislative concern had been previously established in another case. *See id.*

Sixth, we examine a potential defendant's opportunity to ascertain the "true facts" that constitute the offense. When ordinary citizens are not in a position to know about a statute or conduct constituting a violation of the statute, it is unlikely that the legislature intended to forego a culpable mental state. *See State v. Abdallah,* 64 S.W.3d 175, 180 (Tex.App.-Fort Worth 2001, pet. ref'd); *see also Aguirre,* 22 S.W.3d at 476–77. Here, the subject provisions of the Ordinance do not apply to an ordinary citizen; rather, they apply to those employed as an "entertainer" in the highly regulated industry of sexually oriented businesses. *Cf. Abdallah,* 64 S.W.3d at 180 (concluding that average citizen would not likely know of "some obscure statute about placing a stamp on a package of cigarettes, whereas one in the business of selling cigarettes is likely to know, or should know, whether his merchandise is properly marked"). An entertainer would likely have knowledge of the Ordinance and have little difficulty in determining whether she possessed the required permit or whether she was touching a customer while entertaining him. *See Thompson,* 44 S.W.3d at 181 (reviewing Ordinance 97–75's permitting provision and concluding that entertainer could easily ascertain "true facts" with regard to whether she is displaying required permit); *cf. Aguirre,* 22 S.W.3d at 476–77 (holding that employee, unlike the business owner, of live nude business was not in best position to know, nor had much of an incentive to find out, that her place of employment was within 1,000 feet of a school in violation of a city ordinance). The entertainer's ability to easily ascertain the "true facts" favors the imposition of strict liability. *See Thompson,* 44 S.W.3d at 180.

Seventh, we examine the difficulty prosecutors would have in proving a mental state for this type of offense. *See Aguirre,* 22 S.W.3d at 476. The greater the difficulty in proving a mental state, the more likely legislators intended to create a strict liability offense to ensure more effective law enforcement. *Id.* A defendant's intentions or culpable mental state can be inferred from circumstantial evidence, such as her words, actions, and conduct. *See Walker,* 195 S.W.3d at 300 (citing *Smith v. State,* 965 S.W.2d 509, 518 (Tex. Crim.App.1998); *Guevara v. State,* 152 S.W.3d 45, 50 (Tex.Crim.App.2004)). Because intent may be inferred from a defendant's words, actions, and conduct, proving a mental state required to violate the Ordinance is no more difficult than proving a mental state in another offense. *See Walker,* 195 S.W.3d at 300. The seventh factor weighs in favor of a conclusion that the Ordinance requires a culpable mental state.

Eighth, we examine the number of prosecutions expected. The fewer the expected prosecutions, the more likely the legislature intended to require prosecutors to show fault. *Aguirre,* 22 S.W.3d at 476. The greater the number of prosecutions, the more likely the legislature meant to impose liability without regard to fault. *Id.* We, however, lack information regarding this factor; thus, this factor is neutral.

Finally, we examine the severity of the punishment for an offense under the Ordinance. The greater the possible punishment, the more likely some fault is required. *Aguirre,* 22 S.W.3d at 476. Strict liability is generally associated with civil violations that are punishable by fine only. *Walker,* 195 S.W.3d at 300 (citing *Thompson,* 44 S.W.3d at 180). Conversely, if the offense is punishable by confinement, the presumption against strict liability strengthens. *Id.*

A violation of either the permitting or no-touch provisions of the Ordinance is a Class A misdemeanor. *See* HOUSTON, TEX., CODE OF ORDINANCES, No. 97–75, §§ 28–133(a), 28–259(a); TEX. LOC. GOV'T.CODE ANN. § 243.010(b) (Vernon 2005). Punish-

ment for a Class A misdemeanor includes a fine up to $4,000, confinement in jail for a term not to exceed one year, or both a fine and confinement. *See* TEX. PENAL CODE ANN. § 12.21 (Vernon 2011). Possible confinement of up to one year for violation of the Ordinance is a strong indication that a culpable mental state is required. *See Walker*, 195 S.W.3d at 300 (citing *Thompson*, 44 S.W.3d at 180–81). Therefore, the last factor weighs in favor of a conclusion that the Ordinance requires a culpable mental state.

A majority of the factors we have considered weigh in favor of requiring a culpable mental state. These factors are not, however, equally important. *See Aguirre*, 22 S.W.3d at 473 (acknowledging that subject of the statute has been the most important factor in recent cases); *Walker*, 195 S.W.3d at 300 (considering severity of punishment to be significant indicator). Here, the seriousness of the possible punishment, one year in jail, is an important factor that weighs against strict liability. *See Walker* (citing *Ex parte Weise*, 23 S.W.3d 449, 454 (Tex.App.-Houston [1st Dist.] 2000), *rev'd on other grounds*, 55 S.W.3d 617 (Tex.Crim.App.2001)). In addition, the subject of the Ordinance, nude and exotic dancing, is considered *malum in se* and any violations associated with such conduct require a culpable mental state. *See Aguirre*, 22 S.W.3d at 477. Because the majority of the factors weigh in favor of requiring a culpable mental state, we cannot say that the Ordinance

manifests an intent to dispense with a culpable mental state sufficient to overcome the presumption that one is required. *See Aguirre*, 22 S.W.3d at 477; *Walker*, 195 S.W.3d at 300. We conclude that a culpable mental state is required to prove a violation of the Ordinance; that is, offenses under the Ordinance are not strict liability offenses.[9] *See Aguirre*, 22 S.W.3d at 477; *see also Howard*, 172 S.W.3d at 193–94 (concluding that "no touch" provision of Dallas sexually oriented business ordinance required culpable mental state); *Haddad v. State*, 9 S.W.3d 454, 459 (Tex. App.-Houston [1st Dist.] 1999, no pet.) (holding Ordinance 97–75 requires culpable mental state, despite lack of express culpable mental state).

Appellants' contention in their first issue that the Ordinance is unconstitutionally overbroad hinges on their assertion that it does not require the State to prove a culpable mental when prosecuting violations of the Ordinance. Because we conclude that the State is required to prove a culpable mental state when prosecuting the violations of the Ordinance, appellants' overbreadth argument fails.

We overrule appellants' first issue in each appeal.

**Vagueness Challenge**

In their second issue, appellants assert that the Ordinance is unconstitutionally vague on its face. Appellants contend that certain terms used in the Ordinance are not adequately defined.[10] As a result, ap-

---

9. We note that the charging instruments contained in the record assert that appellants "intentionally and knowingly" violated the Ordinance.

10. In their second issue, appellants assert that the Ordinance is unconstitutionally vague and overly broad. Appellants' briefing in support of their second issue focuses on the vagueness claim. Summary statements reminiscent of an overbreadth claim are interspersed in the predominating vagueness arguments, but any

such contentions are not specifically developed, identified, or supported with authority. *See* TEX.R.APP. PROC. 38.1(f). A brief to this Court must contain more than summary statements. *See id.* Therefore, as appellants do, we focus on their vagueness claims. We are, however, aware, as noted by Judge Onion, that "[t]he overbreadth and vagueness doctrines are conceptually distinct, but in the First Amendment context they tend to overlap since statutes are often overly broad because their language is vague about what behavior

pellants claim that the Ordinance (1) fails to put those subject to the Ordinance on notice of what is prohibited, (2) fails to contain objective standards, and (3) gives the police unfettered discretion to determine what conduct amounts to a violation.

## A. The Subject Terms

The Ordinance regulates "entertainers," who are employed by sexually oriented businesses or "enterprises." "Entertainer" is defined as "[a]ny employee of an enterprise who performs or engages in entertainment." HOUSTON, TEX., CODE OF ORDINANCES, No. 97–75, § 28–251. "Entertainment" is, in turn, defined to include "any employee or entertainer exposing any specified anatomical areas or engaging in any specified sexual activities whatever in the presence of customers." *See id.* "Specified anatomical areas" include "less than completely and opaquely covered . . . [f]emale breast or breasts or any portion thereof that is situated below a point immediately above the top of the areola." *See id.* The Ordinance defines "specified sexual activities" to include "[f]ondling or other erotic touching of human genitals, pubic region or pubic hair, buttock or female breast or breasts." *See id.*

Appellants take issue with the phrases "fondling and erotic touching" and "any portion of [the female breast] that is situated below a point immediately above the top of the areola." With regard to the first phrase, appellants assert that it "fails to sufficiently distinguish which conduct constitutes fondling or erotic touching and how it is to be measured." With regard to the second phrase, appellants describe it as being "awkward" and "ambiguous" because it is difficult to ascertain where the "point immediately above the areola" lies.

is proscribed." *Sanchez v. State,* 974 S.W.2d 307, 312 (Tex.App.-San Antonio 1998), *rev'd*

## B. Applicable Legal Principles

The Due Process Clause of the Fourteenth Amendment requires a legislature to define a criminal offense in its penal statutes in a manner sufficient to inform ordinary people whether their conduct is prohibited and to provide minimal guidelines to govern law enforcement. *See State v. Edmond,* 933 S.W.2d 120, 125 (Tex.Crim.App.1996). "Without such guidance, a penal statute might be susceptible to arbitrary and discriminatory enforcement." *Id.*

An appellate court presumes the validity of a statute or ordinance attacked on constitutional grounds. *See Ex Parte Granviel,* 561 S.W.2d 503, 511 (Tex. Crim.App.1978); *Webb v. State,* 991 S.W.2d 408, 414 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd). The court must uphold the ordinance if a reasonable construction will render it constitutional and carry out the legislative intent. *Flores v. State,* 33 S.W.3d 907, 920 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd); *see Ely v. State,* 582 S.W.2d 416, 419 (Tex.Crim.App. 1979);

A statute is vague if persons of common intelligence must necessarily guess at its meaning and differ about its application. *See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982); *Cotton v. State,* 686 S.W.2d 140, 141 (Tex.Crim.App.1985). A statute need not be mathematically precise; it need only give fair warning, in light of common understanding and practices. *See Ex parte Anderson,* 902 S.W.2d 695, 699 (Tex.App.-Austin 1995, pet. ref'd). A statute is not unconstitutionally vague merely because the words or terms used

*on other grounds,* 974 S.W.2d 307 (Tex.App.-San Antonio 1998).

are not defined. *See Edmond,* 933 S.W.2d at 126.

When a word is not defined, it is ordinarily given its plain meaning unless the statute clearly shows that it was used in some other sense. *Flores,* 33 S.W.3d at 921 (citing *Anderson,* 902 S.W.2d at 699). Statutory words should be read in context and construed according to the rules of grammar and common usage. *See* Tex. Gov't Code Ann. § 311.011(a) (Vernon 2005). Words defined in dictionaries and with meanings so well known as to be understood by a person of ordinary intelligence are not vague and indefinite. *See Floyd v. State,* 575 S.W.2d 21, 23 (Tex. Crim.App.1978); *Anderson,* 902 S.W.2d at 700.

## C. Analysis

### 1. *Fondling or other erotic touching*

With respect to the phrase, "fondling or other erotic touching," appellants complain that "[the] terms are vague because they are inherently resistant to a single meaningful interpretation." Appellants assert that the Ordinance neither describes sufficiently what constitutes "fondling or other erotic touching" nor defines how to measure it. Appellants suggest that inadvertent touching may be enough. They question how long or how much touching constitutes fondling and ponder how and who will determine the erotic nature of the touching.

We disagree with appellants' contentions. Appellants incorrectly read each word in the phrase in isolation, and they incorrectly read the phrase in isolation from the rest of the Ordinance. Appellants also fail to assign the terms their common meanings.

In the context of the phrase itself, the word "erotic" is the defining term; it serves to modify "touching" and also to define "fondling." By the phrasing "fondling or *other* erotic touching," the intent of Ordinance's drafters is apparent. It is the "erotic" nature of the touching and fondling that is significant and defining in this phrase.

In *Flores,* the Fourteenth Court of Appeals determined whether the term "erotic," in the context of the same ordinance at issue here, is unconstitutionally vague. *See Flores,* 33 S.W.3d at 921. The *Flores* court provided the following analysis:

In the context of the Ordinance, the term "erotic" describes how the entertainer touches specific body parts, the whole of which comprise a sexual activity. The commonly understood meaning of "erotic" is "of or causing sexual love, esp. tending to arouse sexual desire or excitement." The Oxford Encyclopedic English Dictionary 483 (1991); *see also* Webster's Ninth New Collegiate Dictionary 422 (1983) (defining erotic as "of, devoted to, or tending to arouse sexual love or desire"). Thus, erotic touching of a specified body part in the context of this Ordinance means touching a specified body part in such a manner that would tend to arouse sexual desire or excitement.

*Id.*

The *Flores* court concluded, "The language of the Ordinance is not unconstitutionally vague. It conveys a sufficient warning about the proscribed conduct when measured by a common understanding and practice." *Id.* at 922. We agree with the above reasoning and conclusion of the *Flores* court.[11] In short, the term

---

**11.** We recognize that the vagueness challenge in *Flores* was an "as applied" challenge, rather than a facial challenge to the Ordinance. Nonetheless, the portion of the *Flores* court's analysis cited above applies equally to a facial challenge. We do not rely on the portion of the *Flores* opinion discussing and analyzing the specific evidence in that case.

"erotic" is a common word with an unambiguous meaning.

Similarly, the words "fondling" and "touching" are words of common understanding. In this case, the contextual meaning of these words is clear because the object of touching and fondling in the Ordinance are specifically identified erogenous zones and are modified by the term "erotic." Under these circumstances, the average person would understand this to mean sexual contact.

We note that courts in other jurisdictions have concluded that the term "fondle" is not vague when used in the regulation of sexually oriented businesses. *See, e.g., Giovani Carandola, Ltd. v. Fox,* 470 F.3d 1074, 1081 (4th Cir.2006) (concluding that the term "fondle," when used in conjunction with specified erogenous zones, indicates that "it aims to prevent overt sexual contact, something the ordinary person likely understands"); *Kev, Inc. v. Kitsap County,* 793 F.2d 1053, 1057–58 (9th Cir.1986) (holding that provisions of ordinance prohibiting erotic dancers from "fondling" and "caressing" any patron were not unconstitutionally vague); *J.L. Spoons, Inc. v. O'Connor,* 190 F.R.D. 433, 444 (N.D.Ohio 1999) (holding that word "fondle" is sufficiently clear and noting that "[r]egulatory language need not be mathematically precise"). We recognize that the word "touching" may be more amorphous in its meaning than "fondling," but when read in the context of the entire phrase and ordinance, and as modified by the term "erotic," the meaning of "touching" can also be commonly understood to mean sexual contact.

A statute need not be mathematically precise; it need only give fair warning in light of common understanding and practices. *See Flores,* 33 S.W.3d at 920–21; *Anderson,* 902 S.W.2d at 699. The phrase "fondling or other erotic touching" provides a sufficient warning to place persons of ordinary intelligence on notice regarding what conduct the Ordinance regulates and to prevent the risk of arbitrary enforcement. We conclude that the phrase "fondling or other erotic touching," as used in the Ordinance, is not unconstitutionally vague.

*2. Any portion of [the female breast] that is situated below a point immediately above the top of the areola*

▪ Appellants assert that "[t]he definition of 'entertainment' is also vague insofar as it hinges on an entertainer or employee engaging in conduct that exposes 'any portion of [the female breast] that is situated below a point immediately above the top of the areola.' " Appellants acknowledge that the term "areola" is "a medical term, with a specific meaning, and an absolute beginning and end." Nonetheless, appellants assert that the phrase as a whole is too subjective, lending itself to many interpretations. For example, appellants posit that the phrase could be interpreted to refer only to the areola, to the areola and those portions below the areola, but not those portions to the side of the areola, or to the entire breast below the areola.

The Delaware Superior Court reviewed a similar phrase for vagueness in *State v. Fantasia Restaurant & Lounge, Inc.,* 2004 WL 483649 (Del.Super.Ct. Mar. 9, 2004). There, the court held that the phrase was not unconstitutionally vague. *See id.* at *4. The *Fantasia* court reasoned,

And while the phrase 'female breast below the top of the areola' could conceivably be open to some interpretation, this Court believes that a person of ordinary intelligence could reasonably be expected to know that the term refers to the entire area of the entire breast below the top of the areola, not simply the

strip of flesh the width of the areola below the top of the areola.

*Id.* at \*4.

This is also the interpretation adopted by the Florida Supreme Court when it reviewed the same issue. *See City of Daytona Beach v. Del Percio,* 476 So.2d 197, 200 (Fla.1985). In *Del Percio,* the court held that the phrase was not unconstitutionally vague. *See id.* Similar to the *Fantasia* court, the *Del Percio* court stated, "The plain meaning of the statute is ... that no portion of the breast directly or laterally below the top of the areola may be exposed to public view." *See id.*

After giving effect to every word in the phrase, we agree with the *Del Percio* and *Fantasia* courts that, under the plain language of the Ordinance, a person of ordinary intelligence would understand the phrase to describe the entire breast that is below the top of the areola. *See Fantasia Restaurant & Lounge,* 2004 WL 483649, at \*4; *Del Percio,* 476 So.2d at 200. To read the phrase in a manner consistent with one of the other variant interpretations suggested by appellants would require us to ignore the complete wording of the phrase: "*any portion* of [the female breast] that is situated below a point immediately above the top of the areola." Thus, it is clear that the phrase does not refer only to the areola and does not exclude portions of the breast lateral to the areola, as appellants suggest.

■ Appellants, however, contend that to interpret the phrase to mean the entire breast that is below the top of the areola "makes little sense either on a practical level or within normal rules of construction." Appellants state, "From a practical perspective, the end result is that exotic dancers would be held to a higher standard than females who wear a bikini to a swimming pool, the beach, or other function, [or] a low cut evening dress to a charity ball...." Appellants assert that it is unconstitutional to place a higher burden on an exotic dancer—whose conduct is constitutionally protected—than is placed on a person whose conduct is not similarly protected. We disagree. First Amendment protection does not guarantee an exotic dancer the right to engage in the protected expression at all times and places or in any manner that may be desired. *Howard,* 172 S.W.3d at 192 (citing *Hang On, Inc. v. City of Arlington,* 65 F.3d 1248, 1254 (5th Cir.1995); *2300, Inc. v. City of Arlington, Texas,* 888 S.W.2d 123, 127 (Tex.App.-Fort Worth 1994, no pet.)).

■ A governmental entity, when acting to further legitimate ends of the community, may impose incidental burdens on this protected expression through "content-neutral" regulations of time, place, or manner. *Id.* (citing *Hang On, Inc.,* 65 F.3d at 1254; *2300, Inc.,* 888 S.W.2d at 128). An ordinance is content-neutral if it is justified without reference to the content of the regulated speech or expression and serves purposes unrelated to the content of expression. *Howard,* 172 S.W.3d at 192 (citing *City of Renton v. Playtime Theatres,* 475 U.S. 41, 49, 106 S.Ct. 925, 930, 89 L.Ed.2d 29 (1986)). "No touch" provisions, such as the one at issue here, have been deemed to be content-neutral because they do not discriminate on the basis of the content of the dance performance and are directed toward the secondary effects of adult cabarets, including prostitution, drug dealing, and assault. *See Howard,* 172 S.W.3d at 192; *2300, Inc.,* 888 S.W.2d at 128; *see also Millennium Rest. Group, Inc. v. City of Dallas, Tex.,* 181 F.Supp.2d 659, 665 (N.D.Tex. 2001).

In addition, the Fifth Circuit Court of Appeals has specifically held Ordinance 97–75 to be content-neutral. *See N.W. Enters. Inc,* 352 F.3d at 176. The

court stated that the legislative history of Ordinance demonstrates that the city's predominant concern in enacting the Ordinance was to regulate the secondary effects, i.e., the crimes, associated with the operation of sexually oriented businesses. *See id.* Thus, contrary to appellants' contention, an exotic dancer performing in a sexually oriented business may be subject to more restrictions "than females who wear a bikini to a swimming pool, the beach, or other function, [or] a low cut evening dress to a charity ball."

We conclude that the phrase "any portion of [the female breast] that is situated below a point immediately above the top of the areola" provides a sufficient warning to place persons of ordinary intelligence on notice regarding what conduct the Ordinance regulates and to prevent the risk of arbitrary enforcement. Thus, the phrase, as used in the Ordinance, is not unconstitutionally vague.

We overrule appellants' second issue in each appeal.

### Authority to Regulate Under Chapter 243 of Local Government Code

■■■ In their third issue, appellants contend that the Ordinance is "an unlawful expansion of the City's authority and violates the doctrine of preemption."

Appellants are each charged with Class A misdemeanors for violating section 28–258 of the Ordinance. This section prohibits entertainers from, *inter alia,* touching customers while engaging in entertainment. *See* HOUSTON, TEX., CODE OF ORDINANCES, No. 97–75, § 28–258(a). It also regulates other conduct of entertainers. *See id.* Entertainers are also required to obtain and to display a permit to engage in entertainment. *See* HOUSTON, TEX., CODE OF ORDINANCES, No. 97–75, § 28–253.

The Ordinance's penalty provision associated with violating the conduct and permit provisions, provides as follows: "The violation of any provision of this article, including the doing of anything which is herein prohibited or declared to be unlawful or the failure to do anything or perform any duty which is required herein, shall be punishable as provided by Section 243.010(b) of the Local Government Code." *See* HOUSTON, TEX., CODE OF ORDINANCES, No. 97–75, § 28–259(a). Local Government Code section 243.010(b) provides, "A person commits an offense if the person violates a municipal or county regulation adopted under this chapter. An offense under this subsection is a Class A misdemeanor." TEX. LOC. GOV'T CODE ANN. § 243.010(b) (Vernon 2005).

Appellants assert that the City of Houston did not adopt the provisions of the Ordinance regulating the conduct and permitting of entertainers "under this chapter"; that is, it did not adopt those regulations pursuant to Chapter 243 of the Local Government Code. Instead, appellants contend that the City enacted those regulations, and the penalty for violating the regulations, under its home-rule authority.

Appellants contend that because the provisions regulating employee conduct and permitting were enacted under the City's home-rule authority, and not pursuant to Chapter 243, "the only authority the City has in relation to punishment is to enforce the violations by fine only." *See* TEX. LOC. GOV'T CODE ANN. § 54.001(b) (Vernon 2008) (providing that a violation of an ordinance may result in a fine only, not to exceed $2,000). Appellants argue, "Continued prosecution against appellant[s] for a Class A misdemeanor is an unlawful expansion of the City's authority in violation of the limits set forth in the Local Government Code and the doctrine of preemption."

Here, we must ascertain whether the City has the authority to impose a Class A

misdemeanor penalty for violating the Ordinance's provisions regulating entertainer conduct and permitting. To do so, we must determine whether the City was allowed to enact those provisions under the authority of Chapter 243.

▪ We begin our analysis by examining Chapter 243. Generally, we construe statutes as written and, when possible, ascertain the legislative intent from the language used within the statute. *See Marcus Cable Assocs., L.P. v. Krohn,* 90 S.W.3d 697, 706 (Tex.2002). We also construe the statute as a whole and will not give one provision a meaning which is out of harmony or inconsistent with other provisions of the statute. *Id.*

This Court has previously stated, "Chapter 243 is the enabling legislation that permits municipalities to regulate sexually oriented businesses." *Haddad,* 9 S.W.3d at 459. Chapter 243 provides that "[a] municipality by ordinance ... may adopt regulations regarding sexually oriented businesses as the municipality or county considers necessary to promote the public health, safety, or welfare." *See* TEX. LOC. GOV'T CODE ANN. § 243.003(a) (Vernon 2005). As one court recognized, "[I]t is apparent that the Legislature intended to provide a broad framework for regulation of certain 'sexually oriented businesses' while authorizing municipalities and counties to enact ordinances within that framework." *See State v. Chacon,* 273 S.W.3d 375, 379 (Tex.App.-San Antonio 2008, no pet.).

Appellants point to sections 243.006 and 243.007 to support their claim that the City regulates the conduct of entertainers who work in sexually oriented businesses under its home-rule authority and not under the authority of Chapter 243. Sections 243.006 and 243.007 authorize a municipality to restrict or prohibit the location of a sexually oriented business and to require an owner or operator to obtain a license or permit to operate the business. TEX. LOC. GOV'T CODE ANN. § 243.006(a) (providing that municipality may restrict location of sexually oriented businesses); § 243.007(a) (providing that municipality may require owner or operator of sexually oriented business to obtain license or permit). Citing sections 243.006 and 243.007, appellants contend that the City's authority to enact ordinances pursuant to Chapter 243 is limited to regulating the location of sexually oriented businesses and to permitting the owner/operator of such businesses. For this reason, they argue that the enforcement provision of the Local Government Code, section 243.010, applies only to location or owner/operator permit violations; it does not apply to violations of the Ordinance provisions regulating entertainer conduct.

▪ We disagree that Chapter 243 does not contemplate a city's regulation of the conduct of persons working in sexually oriented businesses. *See Chacon,* 273 S.W.3d at 381; *see also Ex parte Smalley,* 156 S.W.3d 608, 610–611 (Tex.App.-Dallas 2004, pet. dism'd); *Thompson,* 44 S.W.3d at 176; *Flores,* 33 S.W.3d at 916; *Haddad,* 9 S.W.3d at 458. In enacting Chapter 243, the legislature expressly found that "the unrestricted operation of certain sexually oriented businesses may be detrimental to the public health, safety, and welfare by contributing to the decline of residential and business neighborhoods and the growth of criminal activity." TEX. LOC. GOV'T CODE ANN. § 243.001(a). The purpose of Chapter 243 is to give local governments a means of dealing with this problem. *Smalley,* 156 S.W.3d at 611 (citing TEX. LOC. GOV'T CODE ANN. § 243.001(a)).

The legislature granted cities broad authority to "adopt regulations regarding sexually oriented businesses as the municipality ... considers necessary to promote the public health, safety, or welfare." TEX.

Loc. Gov't Code Ann. § 243.003(a). Chapter 243 further states that "[t]his chapter does not diminish the authority of a local government to regulate sexually oriented businesses with regard to *any matters*." Tex. Loc. Gov't Code Ann. § 243.001(b) (emphasis added); *see Haddad,* 9 S.W.3d at 459 ("Clearly, the conduct of individual employees, as it relates to activities of the sexually oriented business, falls within the ambit of 'any matters.'"). "Neither the stated purpose nor the broad grant of authority contained within section 243.003 limits the type of municipal regulations contemplated under [Chapter 243]." *Chacon,* 273 S.W.3d at 380–81.

Although sections 243.006 and 243.007 authorize a city to regulate the location of the business and permitting of the owner/operator of a sexually oriented business, nothing in the language of those sections limits the entirety of Chapter 243, or the penal provisions of section 243.010, to those regulations. *See Smalley,* 156 S.W.3d at 611. We disagree with the premise that the enforcement provision of section 243.010(b) applies only to violations of owner/operator permitting and zoning-type regulations. *See id.* We conclude that the Ordinance's provisions regulating the conduct and permitting of entertainers are authorized under Chapter 243. *See Thompson,* 44 S.W.3d at 176. Thus, the City properly made violations of those provisions punishable as Class A misdemeanors. *See Chacon,* 273 S.W.3d at 381. We hold that the Ordinance is not "an unlawful expansion of the City's authority in violation of the limits set forth in the Local Government Code and the doctrine of preemption," as claimed by appellants.

We overrule appellants' third issue in each appeal.

## Disproportionate Punishment

■■■ In their fourth issue, appellants contend that the Ordinance is unconstitutional under the Eighth Amendment to the United States Constitution and Article I, section 13 of the Texas Constitution because it authorizes punishment not proportionate to any offense committed for violating the Ordinance.[12]

■■■■ The Eighth Amendment, which forbids cruel and unusual punishments, contains a narrow proportionality principle prohibiting a sentence from being greatly disproportionate to the crime it punishes. *See Ewing v. California,* 538 U.S. 11, 20, 123 S.Ct. 1179, 1185, 155 L.Ed.2d 108 (2003) (citing *Harmelin v. Michigan,* 501 U.S. 957, 996–997, 111 S.Ct. 2680, 2702, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring in part and concurring in judgment)). Embodied in the Constitution's ban on cruel and unusual punishments is the "precept of justice that punishment for crime should be graduated and proportioned to [the] offense." *Weems v. United States,* 217 U.S. 349, 367, 30 S.Ct. 544, 549, 54 L.Ed. 793 (1910). The Eighth Amendment does not require strict proportionality between crime and sentence; rather, it forbids only extreme sentences that are grossly disproportionate to the crime. *See Ewing,* 538 U.S. at 23, 123 S.Ct. at 1187.

In *Graham v. Florida,* —— U.S. ——, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), the Supreme Court of the United States stated that generally there are two classifications of proportionality challenges to sentences.

---

**12.** Appellants do not argue that Article I, section 13 of Texas Constitution provides any more or different protection than its federal counterpart. Accordingly, we examine their argument solely under the Eighth Amend-

ment. *See Buster v. State,* 144 S.W.3d 71, 81 (Tex.App.-Tyler 2004, no pet.); *see also Baldridge v. State,* 77 S.W.3d 890, 893–94 (Tex. App.-Houston [14th Dist.] 2002, pet. ref'd).

"The first involves challenges to the length of term-of-years sentences given all the circumstances in a particular case." *Graham*, 130 S.Ct. at 2021. Under this approach, courts must determine "whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime." *Id.* at 2022.

"The second classification of cases has used categorical rules to define Eighth Amendment standards." *Id.* This classification consists of two subsets, one considering the nature of the offense, the other considering the characteristics of the offender. *Id.* Here, we are presented with a categorical challenge turning on the nature of the offense.

As discussed, a violation of any provision of the Ordinance is a Class A misdemeanor. *See* HOUSTON, TEX., CODE OF ORDINANCES, No. 97–75, §§ 28–133(a), 28–259(a); Tex. Loc. Gov't.Code Ann. § 243.010(b). Appellants contend that punishing a violation of the Ordinance as a Class A misdemeanor is disproportionate to the offense. Appellants argue the disproportionate nature of the punishment is shown within the Ordinance itself. Appellants point out that any violation of the Ordinance, whether it is a permitting violation or a conduct violation, is punished as a Class A misdemeanor. Appellants assert, "The failure to address even elementary situational distinctions should be sufficient itself to illustrate the point that the statute was never designed to correlate the punishment with the crime."

Appellants further asserts, "The clearest argument for disproportionality exists when comparing the punishment for [sexually oriented business] ordinance violations with that of prostitution—likely the primary evil the [ ] ordinance was designed to curtail." Appellant emphasizes that, while a violation of the Ordinance is a Class A misdemeanor, the offense of prostitution is a Class B misdemeanor.

When faced with a categorical challenge, such as the one here, the judiciary, in determining whether the punishment at issue is grossly disproportionate to the offense, must consider the following: (1) whether there is a national consensus against imposing the punishment for the offense; (2) the moral culpability of the offenders at issue in light of their crimes and characteristics; (3) the severity of the punishment; and (4) whether the punishment serves legitimate penological goals. *Graham*, 130 S.Ct. at 2022, 2026; *see Meadoux v. State*, 325 S.W.3d 189, 194 (Tex. Crim.App.2010). It is an appellant's burden to show these factors. *Meadoux*, 325 S.W.3d at 194 n. 7.

Here, there is no evidence or discussion of a national consensus against prosecuting a violation of the Ordinance as a Class A misdemeanor. With regard to moral culpability, we can think of no reason why exotic dancers would not be morally culpable for violating the Ordinance. *Cf. Meadoux*, 325 S.W.3d at 194–95 (discussing juvenile defendant's argument that he was less morally culpable for murder than adult offenders in support of his contention that life in prison for juvenile offenders is disproportionate sentence).

For violating the Ordinance, a Class A misdemeanor, an offender can be fined up to $4,000, confined in jail for a term not to exceed one year, or receive both punishments. *See* TEX. PENAL CODE ANN. § 12.21. While it is not inconsequential, such punishment is less than the punishment range for offenses that the Ordinance was enacted to prevent, such as narcotics and prostitution violations. *See N.W. Enters. Inc.*, 352 F.3d at 176 n. 7 (detailing that Ordinance 97–75 enacted to prevent associated crimes, including narcotics offenses). For example, the offense of possession of less than one gram of a Penalty 1 controlled substance is a state jail felony, which has a

punishment range of not more than two years or less than 180 days' imprisonment. TEX. HEALTH & SAFETY CODE ANN. § 481.115(a) (Vernon 2010); TEX. PEN.CODE ANN. § 12.35(a) (Vernon 2011).

Significantly, certain prostitution offenses, which, as mentioned, appellants characterize as "the primary evil the [ ] ordinance was designed to curtail," have punishment ranges greater than or equal to that of a violation of the Ordinance. The offense of prostitution is raised from a Class B misdemeanor to Class A misdemeanor if the offender has previously been convicted of prostitution once or twice under Penal Code section 43.02. *See* TEX. PENAL CODE ANN. § 43.02 (Vernon 2011). Section 43.02 further provides that if an offender has been previously convicted three or more times under that section, then the offense is a state jail felony. *See id.*

Penal Code sections 43.03 and 43.04 define criminal offenses for promoting prostitution. *See* TEX. PENAL CODE ANN. §§ 43.03, 43.04 (Vernon 2011). Offenses relating to the promotion of prostitution range from a Class A misdemeanor to a third-degree felony. *See* TEX. PENAL CODE ANN. §§ 43.03(b), 43.04(b). In addition, Penal Code section 43.05 defines the offense of "compelling prostitution" as a second-degree felony. *See* TEX. PENAL CODE ANN. § 43.05 (Vernon 2011).

 With respect to penological goals, a sentence can have a variety of justifications, such as incapacitation, deterrence, retribution, or rehabilitation. *Ewing,* 538 U.S. at 25, 123 S.Ct. at 1187; *see Meadoux,* 325 S.W.3d at 195. Some or all of these justifications may play a role in a State's sentencing scheme. *Id.* Selecting the sentencing rationales is generally a policy choice to be made by state legislatures, not the courts. *Id.* Indeed, the Texas Legislature, when it enacted Chapter 243, observed that "the unrestricted

operation of certain sexually oriented businesses may be detrimental to the public health, safety, and welfare by contributing to the decline of residential and business neighborhoods and the growth of criminal activity." TEX. LOC. GOV'T CODE ANN. § 243.001(a). The legislature gave cities broad authority to "adopt regulations regarding sexually oriented businesses as the municipality ... considers necessary to promote the public health, safety, or welfare." TEX. LOC. GOV'T CODE ANN. § 243.003(a). As discussed by the Fifth Circuit in *N.W. Enterprises,* Ordinance 97–75 was enacted specifically to regulate and to prevent a gamut of criminal offenses associated with the operation of sexually oriented businesses. *N.W. Enters. Inc.,* 352 F.3d at 176 & n. 7. Prosecuting violations of the Ordinance as a Class A misdemeanor is justified to deter continuing violations of the Ordinance that legislative bodies have determined leads to greater criminal activities.

We conclude that appellants have not carried their burden to show that the punishment range for a Class A misdemeanor is grossly disproportionate to the offense of violating the Ordinance.

We overrule appellants' fourth issue in each appeal.

### Conclusion

We affirm the orders of the trial court denying appellants' habeas relief in each appeal.