**Opinion issued May 28, 2026**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-25-00156-CR

_____

**CLAYTON SCHOELLKOPF, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 412th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 100897-CR**

## MEMORANDUM OPINION

After appellant, Clayton Schoellkopf, without an agreed punishment recommendation from the State, pleaded guilty to the felony offense of cruelty to nonlivestock animal,[1] the jury found him guilty and assessed his punishment at

---

[1]    *See* TEX. PENAL CODE ANN. § 42.092(b), (c-1).

confinement for six years.  In his sole issue, appellant contends that the jury erred in assessing his punishment.[2]

We modify the trial court's judgment and affirm as modified.

## Background

During the punishment phase of trial, Alvin Police Department ("APD") Officer S. Utsey testified that on March 11, 2024, he responded to a call for emergency assistance "saying that somebody had cut a cat's head off" in a wooded area near a restaurant in Alvin, Brazoria County, Texas.  According to Utsey, there was "a homeless encampment" near that area.

When Officer Utsey arrived at the scene, he approached appellant, with whom he was familiar, and asked him "if he had cut a cat's head off."  Appellant initially said "no," but then said that "he killed the cat . . . because he couldn't take care of it" and he "decided to get rid of it."  Utsey detained appellant and removed a knife from appellant's person.  The knife had blood and fur on it.  According to Utsey, another law enforcement officer and an animal control officer later found the deceased cat.  The cat's head was not "cut off."

APD Officer K. Villaloboz testified that he was a member of the APD's Humane Division, and he responded to a call about the possible beheading of a cat near a restaurant in Alvin on March 11, 2024.  Upon arrival, Villaloboz went to the

---

[2]     *See* U.S. CONST. amend. VIII; TEX. CONST. art. I, § 13.

"homeless encampment" where individuals there directed him to the deceased cat. There was blood on the ground near the cat and "other spots" of blood as well, some of which were feet away from where the cat was ultimately found. Villaloboz noted a "puncture mark right in [the cat's] throat area." The cat's head was not "cut off."

Officer Villaloboz further testified that because appellant had stated that the cat possibly had a snake bite, he transported the deceased cat to the animal shelter to determine if there were any bite marks. Upon examination, no bite marks were found on the cat; the only injury that the cat had was "the huge hole in [its] throat." Photographs of the deceased cat and the blood found by Villaloboz at the scene were admitted into evidence.

Dr. Jim Crumm, a veterinarian, testified that he performed a postmortem examination on the deceased cat found on March 11, 2024. During his examination, he found "a deep laceration into the right jugular furrow of the [cat's] neck, at the base of the neck." There were no other puncture wounds, swelling, or bruising on the other parts of the cat's body. The only injury "was the deep laceration puncture wound into the right jugular, which [was] the crease that r[an] down the right side of the [cat's] neck from the jaw to the base of the chest." Crumm did not see any sign of a snake bite on the cat. In his report, Crumm stated

that the laceration to the cat's throat had most likely caused its death. Photographs of the examination of the cat at the animal shelter were admitted into evidence.

Gail Schoellkopf, appellant's mother, testified that she had spoken to appellant about the incident with the cat, and appellant told her that "he had a cat[,] and he thought the cat had gotten bit by a snake and so he put it out of [its] misery." Appellant also told her that he was "stoned" at the time, which appellant's mother stated meant that appellant "was on something." According to his mother, appellant used narcotics "[o]ff and on."

Appellant's mother further testified that she had told appellant to say that the cat had "attacked him" so that he had "a defense for his behavior." Additionally, his mother noted that at the time of the cat incident, appellant was homeless and had been for about five years. Appellant had primarily been staying at the "homeless encampment" where the deceased cat was found.

According to appellant's mother, appellant "[s]ometimes . . . g[ot] upset" and would yell. Appellant had gotten into a physical altercation with his father, and he had been found guilty of assaulting his mother in 2018 while under the influence of marijuana and alcohol. Appellant's mother "kick[ed] him out of the house" after he assaulted her. While speaking to appellant after he was arrested in the instant case, appellant's mother recalled that appellant had threatened the other

4

people from the "homeless encampment" because they had taken his property and he was upset about it.

The trial court admitted into evidence a copy of a judgment of conviction, stating that on November 7, 2018, appellant was found guilty of the misdemeanor assault of a family member,[3] namely, his mother, and his punishment was assessed at confinement for 236 days in county jail.[4] The trial court also admitted into evidence a judgment adjudicating appellant guilty, on February 13, 2024, of the misdemeanor offense of assault of a family member.[5] Appellant's punishment was assessed at confinement for thirty days in county jail. Finally, the trial court admitted into evidence an order of deferred adjudication stating that on March 4, 2014, appellant pleaded nolo contendere to the misdemeanor offense of assault[6] and was placed on community supervision for a period of nine months.[7]

---

[3] *See* TEX. PENAL CODE ANN. § 22.01(a)(1).

[4] The information charging appellant with the offense, a copy of which the trial court admitted into evidence, alleged that appellant "intentionally, knowingly, or recklessly cause[d] bodily injury to [his mother] by grabbing and/or choking [her] with [his] hand and/or hands."

[5] Appellant testified that he had assaulted his ex-girlfriend.

[6] The information charging appellant with the offense, a copy of which was admitted into evidence, named appellant's father as the complainant and alleged that appellant had struck his father "on the face and/or head with" his hand or fist.

[7] Appellant also testified during the punishment phase of trial.

## Cruel and Unusual Punishment

In his sole issue, appellant argues that the jury erred in assessing his punishment because "the sentence assessed against him was excessive and grossly disproportionate to the crime committed."

The Eighth Amendment of the United States Constitution and Article I, section 13 of the Texas Constitution require that a criminal sentence be proportionate to the crime for which the defendant has been convicted.[8] *Solem v. Helm*, 463 U.S. 277, 290 (1983); *Noland v. State*, 264 S.W.3d 144, 151 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *see* U.S. CONST. amend. VIII; TEX. CONST. art. I, § 13. Texas courts have generally held that a punishment that falls within the limits prescribed by a valid statute is not excessive, cruel, or unusual. *See State v. Simpson*, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016); *Ajisebutu v. State*, 236 S.W.3d 309, 314 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) ("Generally, a sentence within the statutory range of punishment for an offense

---

[8] Although appellant bases his argument on both the United States and Texas Constitutions, he argues the two provisions together, providing no separate argument under the Texas Constitution or any argument that the Texas Constitution provides more protection than the United States Constitution. *See Heitman v. State*, 815 S.W.2d 681, 690 n.23 (Tex. Crim. App. 1991); *Rivera v. State*, 363 S.W.3d 660, 678 n.12 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Texas courts have consistently concluded that there is "no significance in the difference" between the two constitutional provisions. *See Cantu v. State*, 939 S.W.2d 627, 645 (Tex. Crim. App. 1997); *see also Vazquez v. State*, No. 01-17-00445-CR, 2018 WL 1321123, at *2 n.3 (Tex. App.—Houston [1st Dist.] Mar. 15, 2018, pet. ref'd) (mem. op., not designated for publication).

will not be held cruel or unusual under the Constitution of either Texas or the United States.").

To preserve for appellate review a complaint of cruel and unusual punishment, a defendant must present his complaint to the trial court through a timely request, objection, or motion stating the specific grounds for the ruling desired. *See* TEX. R. APP. P. 33.1(a); *Ladd v. State*, 3 S.W.3d 547, 564 (Tex. Crim. App. 1999) (concluding defendant did not preserve cruel-and-unusual-punishment complaint for appellate review); *Solis v. State*, 945 S.W.2d 300, 301 (Tex. App.— Houston [1st Dist.] 1997, pet. ref'd); *see also Vazquez v. State*, No. 01-17-00445-CR, 2018 WL 1321123, at *2 (Tex. App.—Houston [1st Dist.] Mar. 15, 2018, pet. ref'd) (mem. op., not designated for publication); *Nicholas v. State*, 56 S.W.3d 760, 768 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (specific objection must be made in trial court to preserve federal or state constitutional claim of cruel and unusual punishment). A specific objection to the trial court brings the trial court's attention to a possible error that it may correct. *See Solis*, 945 S.W.2d at 301 ("The purpose for the rule is to allow . . . the trial court to cure any harm."); *see also Vazquez*, 2018 WL 1321123, at *2. Even a constitutional error may be waived by the failure to timely complain in the trial court. *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995).

Here, after the trial court announced his sentence, appellant did not object, obtain a ruling from the trial court, or raise his cruel-and-unusual-punishment complaint in a motion for new trial. *See* TEX. R. APP. P. 33.1(a); *Noland*, 264 S.W.3d at 151–52; *Solis*, 945 S.W.2d at 301; *see also Vazquez*, 2018 WL 1321123, at *2. Thus, we hold that he has not preserved his complaint for our review.[9] *See* TEX. R. APP. P. 33.1(a); *Noland*, 264 S.W.3d at 151–52; *see also Vazquez*, 2018 WL 1321123, at *2–3.

**Modification of Judgment**

In its briefing, the State informs the Court that the trial court's judgment should be "reformed to delete the deadly[-]weapon finding and affirmed as modified." We agree.

Related to a deadly-weapon finding on page 3 of the trial court's judgment, under the "special findings" section, it states:

---

[9] Appellant acknowledges in his briefing that his punishment of confinement for six years falls within the applicable statutory range of punishment for the offense of cruelty to nonlivestock animal—in this case, a third-degree felony offense punishable by "imprisonment in the Texas Department of Criminal Justice for any term of not more than 10 years or less than 2 years" and a "fine not to exceed $10,000." *See* TEX. PENAL CODE ANN. §§ 12.34 (punishment for third-degree felony offense), 42.092(c-1) ("An offense under [s]ubsection (b)(1) or (2) is a felony of the third degree . . . ."); *see also Vazquez*, 2018 WL 1321123, at *3 n.4. And appellant does not assert, nor do we conclude, that his sentence resulted from fundamental error such that he was not required to object to preserve error. *See Young v. State*, 425 S.W.3d 469, 473–74 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (holding no fundamental error where defendant convicted of first-degree felony offense and sentenced within statutory range of punishment authorized for such offenses); *see also Vazquez*, 2018 WL 1321123, at *3 n.4.

The Court FINDS Defendant used or exhibited a deadly weapon, namely, a knife, during the commission of a felony offense or during the immediate flight therefrom or was a party to the offense and knew that a deadly weapon would be used or exhibited. TEX. CODE CRIM. PROC. art. 42A.054.

"[A]ppellate court[s] ha[ve] the power to correct and reform a trial court judgment 'to make the record speak the truth when [they] ha[ve] the necessary data and information to do so, or make any appropriate order as the law and nature of the case may require.'" *Nolan v. State*, 39 S.W.3d 697, 698 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (quoting *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd)); *see also* TEX. R. APP. P. 43.2(b). This power includes the power to delete a deadly-weapon finding that was erroneously entered in the trial court's written judgment. *Cobb v. State*, 95 S.W.3d 664, 668 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

In *Prichard v. State*, the Court of Criminal Appeals determined that "a deadly[-]weapon finding may be made for human victims only." 533 S.W.3d 315, 317 (Tex. Crim. App. 2017). And this case involved no "human victims"; the deadly weapon was used against a cat. Thus, we modify page 3 of the trial court's judgment to delete the following from the "special findings" section:

The Court FINDS Defendant used or exhibited a deadly weapon, namely, a knife, during the commission of a felony offense or during the immediate flight therefrom or was a party to the offense and knew that a deadly weapon would be used or exhibited. TEX. CODE CRIM. PROC. art. 42A.054.

*See Malbrough v. State*, 612 S.W.3d 537, 563–64 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) (modifying trial court's judgment to delete improperly entered deadly-weapon finding).[10]

## Conclusion

We modify the trial court's judgment and affirm the judgment as modified.

Kristin Guiney
Justice

Panel consists of Chief Justice Adams and Justices Guerra and Guiney.

Do not publish.  TEX. R. APP. P. 47.2(b).

---

[10] Here, the erroneous deadly-weapon finding did not increase the punishment range for appellant's offense.  *Cf. Finley v. State*, No. 06-17-00008-CR, 2017 WL 4655106, at *8–9 (Tex. App.—Texarkana Oct. 18, 2017, no pet.) (mem. op., not designated for publication) (reversing judgment and remanding for new sentencing hearing where improper deadly-weapon finding "increased the punishment range from that of a state jail felony . . . to that of a third degree felony" and "[i]n the absence of th[e] [deadly-weapon] finding, [defendant's] state jail felony offense would no longer be punishable as a third degree felony").