

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00317-CR

Kevin **OWENS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 187th Judicial District Court, Bexar County, Texas
Trial Court No. 2023CR8385
Honorable Raymond Angelini, Judge Presiding

Opinion by:  Adrian A. Spears II, Justice

Sitting:  Lori I. Valenzuela, Justice
Adrian A. Spears II, Justice
H. Todd McCray, Justice

Delivered and Filed: May 7, 2025

AFFIRMED

A jury convicted Kevin Owens of the offense of harassment, a misdemeanor. *See* TEX.

PENAL CODE § 42.07(c). In two issues, Owens challenges the sufficiency of the evidence to support

his conviction and the constitutionality of the harassment statute. We affirm.

## BACKGROUND

In March 2020, Owens sought counseling services from Larry Williamson, a licensed professional counselor who was working for AMA Behavioral Therapy. When Owens refused to sign consent forms as required, Williamson told Owens he could not be his therapist. On May 1, 2020, Williamson stopped working for AMA. After Williamson left AMA, Owens again contacted Williamson and renewed his request for counseling services. Williamson told Owens he could not take him on as a client because he no longer worked for AMA. Owens then contacted AMA's owner and licensed professional counselor, Andrea Alvarez, and sought counseling services from her. In a call made from her personal cell phone, Alvarez told Owens she would not take him on as a client.

Despite Alvarez's refusal to accept Owens as a client, Owens continued to call both AMA's office phone and Alvarez's personal cell phone.[1] Owens called ABA's office phone five to seven times on October 5, 2020; about eight times on October 6, 2020; at least once on October 7, 2020, and October 12, 2020; three to five times on October 16, 2020; and seven times on October 26, 2020. Additionally, in October 2020, Owens left six voicemails on Alvarez's personal cell phone. In his first voicemail, Owens stated, "Larry Williamson directed me to you all to provide therapeutic services. So, you all are responsible for Larry Williamson to provide those services. Call me back as soon as possible." In his second voicemail, Owens stated: "This is Kevin. Call me back immediately." In his next voicemail, Owens stated,

> How should we punish you? If you don't want to talk on the phone or email, or text, I can just come to your house. That's what you told me to do. That's what you are telling me to do by your actions. This is what you chose. So don't complain to anyone. You chose to force me—to force us to talk in person. So maybe we will have to just talk at your home. Or maybe we can talk at your office. Um . . . you

---

[1]Alvarez believed Owens obtained her personal cell phone number because she forgot to block it when she called him.

could've chosen to talk on the phone, but you chose for us to talk in person. So that's what you get.

Owens then left three more voicemails on Alvarez's personal cell phone insisting that Alvarez call him back.

In response, Alvarez reported Owens to the police and changed her personal cell phone number.

On October 23, 2020, Owens sent an electronic message through AMA's website communication portal, which stated:

> You cannot ignore me. Larry Williamson texted me "I cannot provide therapy services to you since my first contact with you was through [AMA]. I am no longer contracted to provide services at that agency. I signed a noncompete clause with [AMA] and are therefore prohibited from contact with any individual who sought services from that agency. I will direct you to contact [AMA] to inquire about counseling services from a therapist at that location. Please do not contact me in the future. Good luck." YOU MUST PROVIDE THERAPY SERVICES TO ME NOW!

On October 29, 2020, Owens called a nonemergency police phone number and requested a wellness check on Alvarez. Owens told the operator that Alvarez had filed a harassment complaint against him, and he was concerned that Alvarez was having "some kind of psychotic episode or manic episode." Owens provided the operator with Alvarez's home address and officers were sent to Alvarez's house. But when the officers arrived, it was obvious to them that Alvarez was not having a mental health crisis as claimed by Owens.

The grand jury indicted Owens for the felony offense of stalking, *see* TEX. PENAL CODE § 42.072, and Owens pled not guilty.

At trial, the State presented the voicemails Owens left on Alvarez's cell phone, the email Owens sent through AMA's website communication portal, and Alvarez's testimony. Alvarez testified about the many calls Owens made to AMA's office phone. Alvarez also testified that

Owens's "how-should-we-punish-you" voicemail made her feel threatened and fearful in her own home, and Owens's next voicemail demanding that she call him back immediately reminded her that Owens could show up at her house. Alvarez stated: "The fact that [Owens] kept calling, never receiving a call back . . . . I was just afraid of when he was going to take action." Owens's conduct caused Alvarez to change her routine, install security cameras at her office and her home, and request police escorts to her car when she left the office. And, when Owens sent the police to her house for a purported wellness check, it signaled to Alvarez that Owens knew where she lived, and it made her more fearful of Owens. Alvarez testified that Owens's conduct made her feel scared, threatened, alarmed, and harassed.

The State also presented the recording of Owens's wellness check call to police, as well as testimony from a pretrial services officer who identified Owens's voice in the voicemails, the operator who took Owens's wellness check call, and one of the officers who was dispatched to Alvarez's house in response to this call.

The jury found Owens not guilty of the felony offense of stalking, but guilty of the lesser included misdemeanor offense of harassment. As to punishment, the jury assessed no jail time and a $2000.00 fine. Owens appealed.

SUFFICIENCY OF THE EVIDENCE

In his first issue, Owens argues the evidence is both legally and factually insufficient to support the jury's finding of guilt. In Texas, legal sufficiency is the only sufficiency standard recognized when evaluating the sufficiency of the evidence to support a conviction. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). Therefore, we only address Owens's complaint that the evidence is legally insufficient to support his conviction.

We review a challenge to the legal sufficiency of the evidence under the well-established standards set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Wilson v. State*, 448 S.W.3d 418, 425 (Tex. Crim. App. 2014). We view the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *See id*. We measure the legal sufficiency of the evidence by comparing the evidence produced at trial to the essential elements of the offense as defined by the hypothetically correct jury charge. *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

The penal code provides a person commits the offense of harassment "if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another." TEX. PEN. CODE § 42.07(a)(7). In the statute, "electronic communication" includes "a communication initiated through the use of electronic mail," "a cellular or other type of telephone," "an Internet website," or "any other Internet-based communication tool." *Id*. § 42.07(b)(1)(A). In this case, the hypothetically correct jury charge authorized the jury to convict Owens of harassment if it found that Owens—with the intent to harass, annoy, alarm, abuse, torment, or embarrass Alvarez—sent repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend Alvarez.

On appeal, Owens contends the evidence is insufficient to support the jury's verdict because the indictment alleged Alvarez was the complainant, but "a good portion of the testimony

focuse[d] on [Williamson] rather than the complainant, Alvarez." "The complainant is, by definition, the victim of the crime." *Garcia v. State*, 833 S.W.2d 564, 567 (Tex. App.—Dallas 1992), *aff'd*, 868 S.W.2d 337 (Tex. Crim. App. 1993). Here, the testimony, voicemails, and documents admitted at trial showed that Alvarez was the victim of the offense. We conclude the evidence is legally sufficient to support a finding that Alvarez was the complainant.

Owens also contends the evidence is insufficient to support the specific intent element of the offense. Owens maintains the evidence was "purely of a mental health patient requesting treatment" and "the jury was presented evidence of a person without the intent to harass by electronic means but rather was seeking treatment."

To be convicted under the harassment statute, a person must engage in the prohibited conduct with the specific intent to harass, annoy, alarm, abuse, torment, or embarrass another. TEX. PENAL CODE § 42.07(a); *see Scott v. State*, 322 S.W.3d 662, 669 (Tex. Crim. App. 2010), *abrogated in part on other grounds*, *Wilson*, 448 S.W.3d at 423) (recognizing the harassment statute "by its plain text, is directed only at persons who, with the specific intent to inflict emotional distress," engage in the prohibited conduct stated in the statute); *Ex parte Nuncio*, 579 S.W.3d 448, 455 (Tex. App.—San Antonio 2019), *aff'd*, 662 S.W.3d 903 (Tex. Crim. App. 2022) (stating section 42.07(a)'s "text first requires the actor to have the specific intent to inflict harm on the victim in the form of one of the six listed types of emotional distress.").

A person's intent may be inferred from circumstantial evidence, such as his words, actions, and conduct. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004); *Rivera v State*, 363 S.W.3d 660, 670 (Tex. App.—Houston [1st Dist.] 2011, no pet.). "As with all prosecutions, [when prosecuting a harassment case under section 42.07] the State may rely upon the circumstances surrounding a defendant's actions to prove his intent." *Wilson*, 448 S.W.3d at 424. The Texas

Court of Criminal Appeals has reasoned that "the total number of communications" and "the frequency and the temporal relationship of the communications" are "evidentiary matters that may be probative of" "the defendant's intent" to commit the offense of harassment. *Id*. Furthermore, the substance of the defendant's communications may be probative of the defendant's specific intent to commit the offense of harassment. "[C]ourts have found statements such as 'I'm going to get your ass,' and 'I'm going to get you' to be statements that are likely to alarm another." *See Blount v. State*, 961 S.W.2d 282, 284 (Tex. App.—Houston [1st Dist.] 1997, no pet.) (citing *Manemann v. State*, 878 S.W.2d 334, 338 (Tex. App.—Austin 1994, pret. ref'd)).

Here, the evidence showed that months after Alvarez told Owens she would not accept him as a client, Owens repeatedly called her office phone and personal cell phone insisting that she be his therapist. In October 2020, Owens called Alvarez's office phone more than two dozen times and he left six voicemails on Alvarez's personal cell phone. In some of his voicemails, Owens commanded Alvarez to call him back "immediately." In one voicemail, Owens ominously asked how he should "punish" Alvarez and told Alvarez that if she didn't "want to talk on the phone or email," he "could just come to [her] house." In the same voicemail, Owens blamed Alvarez for his actions, telling her: "You chose to force me—to force us to talk in person." And, after threatening to come to Alvarez's house, Owens told Alvarez, "So that's what you get." *See Blount*, 961 S.W.3d at 284 (concluding abusive content of defendant's recorded call was probative of the defendant's specific intent to alarm the complainant). Even after the "how-should-we-punish-you" voicemail, Owens continued to leave voicemails on Alvarez's personal cell phone, insisting that Alvarez call him back. Owens also sent Alvarez an email stating that she could not "ignore" him. Then, on October 29, 2020, Owens arranged for officers to be sent to Alvarez's house for a purported wellness check. Owens gave the police Alvarez's home address, demonstrating that he had figured

out where she lived. Finally, Alvarez testified that Owens's conduct made her feel scared, threatened, alarmed, and harassed. *See Schmidt v. State*, 232 S.W.3d 66, 68-69 (Tex. Crim. App. 2007) (concluding jury could have properly considered victim's testimony to determine if the defendant threatened the victim). Given the cumulative force of all incriminating circumstances, the evidence is legally sufficient to support the jury's finding that Owens had the specific intent to harass, annoy, alarm, abuse, torment, or embarrass Alvarez.

We conclude the evidence, viewed in the light most favorable to the jury's verdict, is legally sufficient to support the jury's finding that Owens committed the offense of harassment. *See Wilson*, 448 S.W.3d at 426 (concluding evidence was legally sufficient to support harassment conviction based on content of six calls combined with evidence of defendant's combative conduct and verbal abuse toward the complainant). We overrule Owens's first issue.

### CONSTITUTIONALITY OF SECTION 42.07(a)(7)

In his second issue, Owens argues Texas Penal Code section 42.07(a)(7) is unconstitutional on its face and as applied to him. The record shows that Owens filed a motion to quash the indictment and a hybrid application for pretrial writ of habeas corpus and motion to dismiss, in which he argued "the statute underlying the charge is unconstitutional" and "unconstitutionally vague." However, the record fails to demonstrate that these arguments were presented to and ruled on by the trial court.

Constitutional challenges must be presented to the trial court, or they are waived on appeal. *Reynolds v. State*, 423 S.W.3d 377, 383 (Tex. Crim. App. 2014) ("'As applied' constitutional claims are subject to the preservation requirement and therefore must be objected to at the trial court in order to preserve error."); *Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009) (stating facial challenge cannot be raised for the first time on appeal); *Cooper v. State*, 673 S.W.3d

724, 749 (Tex. App.—Fort Worth 2023, no pet.) ("[A] challenge to the constitutionality of a statute is a forfeitable right and must be preserved in the trial court during or after trial."); *Sony v. State*, 307 S.W.3d 348, 352–53 (Tex. App.—San Antonio 2009, no pet.) (stating failure to raise facial and as applied challenges to statute's constitutionality in trial court meant complaints were waived on appeal); *see also Lebo v. State*, 474 S.W.3d 402, 404-05 (Tex. App.—San Antonio 2015, pet. ref'd) (determining facial challenge to harassment statute was preserved for appellate review because appellant presented complaint at sentencing hearing and in a hearing held a few days later).

Because Owens failed to present his constitutional complaints to the trial court, he has waived them on appeal. *See Reynolds*, 423 S.W.3d at 383; *Karenev*, 281 S.W.3d at 434; *Cooper*, 673 S.W.3d at 749; *Sony*, 307 S.W.3d at 352–53. We overrule Owens's second issue.

## CONCLUSION

The trial court's judgment is affirmed.

Adrian A. Spears II, Justice

DO NOT PUBLISH